[No. G012028. Fourth Dist., Div. Three. Apr. 16, 1993.]

PRICE PFISTER, INC., Cross-complainant and Appellant, v.
WILLIAM LYON COMPANY et al., Cross-defendants and Respondents.

**[Opinion certified for partial publication.\* ]**

*\*Pursuant to California Rules of Court, rule 976(b), part I of the Discussion is not
published.

COUNSEL

Chase, Rotchford, Drukker & Bogust, William C. Falkenhainer, Richard H. Rabkin and Joan E. Hewitt for Cross-complainant and Appellant.

Schlegel, Stone & Manning, James K. Stone, Jack T. Cornman, Lewis, D'Amato, Brisbois & Bisgaard, Terry L. Sorensen and Troy A. Edwards for Cross-defendants and Respondents.

OPINION

MOORE, J.—In a bifurcated personal injury trial against two defendants, the jury rendered a verdict finding one defendant liable and the other not

liable for the plaintiff's injuries. Before the jury reached a decision on damages, both defendants settled and obtained an order under Code of Civil Procedure section 877.6[1] finding the settlement to be in good faith, thus barring any cross-complaints for contribution or indemnity by joint tortfeasors.

We must decide whether the contribution and indemnity bars of sections 877 and 877.6 apply where a settlement is reached after the liability phase of trial but before damages have been determined.

### FACTS

Kristina Bretza was injured when the bathroom ceiling in her home collapsed on her. Through her guardian ad litem, she filed a complaint against William Lyon Company, the owner and developer of the housing tract, and Leaverton Brothers, the plumbing contractor. The gravamen of the complaint was that Lyon and Leaverton negligently designed, constructed, and maintained the plumbing which caused the pipes in the upstairs bathroom to leak a substantial amount of water, causing the ceiling to collapse. Price Pfister, Inc., a manufacturer of plumbing products, was not named as a defendant, but was named as a cross-defendant by Lyon and Leaverton. The cross-complaints were severed from plaintiff's action and apparently remain to be litigated.

Trial was bifurcated and the jury found Lyon to be 100 percent liable. Before completion of the damage phase, both Lyon and Leaverton settled with Bretza and moved for an order finding the settlement to be in good faith. Pfister opposed the motions, but following a hearing attended by counsel for Lyon, Leaverton and Pfister, the court granted them. The court found the settlement to be in good faith, noting settlement negotiations were conducted over more than four days before two separate judges; Pfister was invited to attend the negotiations but did not, the settlement was approximately 80 to 85 percent of plaintiff's demand and was reasonable under *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159] (hereafter *Tech-Bilt*); and that there was no collusion.[2]

Pfister initially noticed an appeal of the order granting the motions for good faith settlement but later abandoned it. Thereafter, Pfister filed a petition for writ of mandate which we summarily denied. Pfister's petition for review by the Supreme Court was denied.

---

[1] All statutory references are to the Code of Civil Procedure.
[2] Lyon settled for $1,100,000 and Leaverton for its costs of $100,000.

Meanwhile, Bretza filed a new action, essentially identical to the first action, this time naming Pfister as defendant. In her new complaint, Bretza contended the proximate cause of the accident was a shower arm defectively and negligently manufactured, designed, constructed and maintained by Pfister, which caused the pipes in the upstairs bathroom to leak excessive water. Pfister cross-complained against Lyon and Leaverton for total equitable indemnity, comparative indemnity, equitable apportionment of fault, and contribution.

Lyon and Leaverton moved to strike the cross-complaint, contending the good faith settlement in the first action barred all Pfister's claims against them. The court granted the motions and struck Pfister's cross-complaint. This appeal followed.

DISCUSSION

I. *Appealability**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *The Determination That the Settlement Was Timely*

As noted, Lyon and Leaverton settled with Bretza after the jury returned a special verdict finding liability against Lyon, but before damages were assessed and judgment entered. ▮ Pfister contends the court exceeded its jurisdiction by granting the motions for a finding of good faith because the settlement was reached after the finding of liability. It argues that barring a joint tortfeasor from claiming the right to contribution or indemnity based upon a "post-verdict settlement" would lead to a "mad rush" by joint tortfeasors to settle and obtain a release, thus thwarting the provisions of the contribution statute and the right of others to obtain contribution, and would be contrary to the public policy of encouraging settlement and avoiding litigation. We disagree.

Section 877 states in part: "Where a release . . . [or] dismissal with or without prejudice . . . is given in good faith *before verdict or judgment* to one or more of a number of tortfeasors claimed to be liable for the same tort . . . [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release . . . [and] [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. . . ." (Italics added.)

*See footnote, *ante*, page 1643.

Section 877.6 provides in part: "(a) (1) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff . . . and one or more alleged tortfeasors . . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Furthermore, since the statute authorizes the court to shorten the time requirement for making the motion "if settlement is made *after the trial has commenced*," it clearly contemplates a motion can be made during the pendency of trial. (§ 877.6, subd. (a)(1), italics added.)

■ "[A] tort defendant who has entered into a good faith settlement within the meaning of section 877.6, subdivision (c) is absolved of any further liability for all equitable indemnity claims, including claims seeking total equitable indemnity." (*Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796, 817 [251 Cal.Rptr. 202, 760 P.2d 399]; see also *Pioneer Equipment Co.* v. *R.M. Wade & Co.* (1989) 212 Cal.App.3d 824, 830 [260 Cal.Rptr. 815].)

■ Pfister relies heavily on *Halpin* v. *Superior Court* (1971) 14 Cal.App.3d 530 [92 Cal.Rptr. 329] (hereafter *Halpin*). There, the court concluded "[The] words of the section 'before verdict or judgment' must be construed to mean: 'before establishment of liability,' with 'verdict' equated with such liability determination. A settlement between the plaintiff and a tortfeasor whose joint liability has been established is not one within the meaning of that section, and thus cannot effectively deprive the remaining tortfeasors of their rights to contribution." (*Id.* at p. 543.) The court opined that "were the rule to be established otherwise, there would unquestionably occur concurrently with the determination of joint liability a mad rush by one or more of the joint tortfeasors in an effort to settle and to obtain a release . . . ." (*Ibid.*)

*Halpin* is distinguishable from this case. There, the settling defendant was one of two defendants found jointly and severally liable. (14 Cal.App.3d at p. 537.) Here, by contrast, only Lyon was found liable. Pfister, the only remaining cross-defendant, was not a party to the main action. Thus, joint liability has not been established among all the defendants because Pfister's liability, if any, has not yet been adjudicated.

Furthermore, *Halpin* predates section 877.6 and modern views of good faith, first enunciated 20 years ago in *River Garden Farms, Inc.* v. *Superior*

*Court* (1972) 26 Cal.App.3d 986 [103 Cal.Rptr. 498] (hereafter *River Garden Farms*) and approved by the Supreme Court in *Tech-Bilt, supra,* 38 Cal.3d 488. Following the pronouncements on good faith settlements in *River Garden Farms, Halpin* has rarely been followed by the courts of this state. (But see *Southern Cal. White Trucks* v. *Teresinski* (1987) 190 Cal.App.3d 1393, 1405 [236 Cal.Rptr. 159] (hereafter *Teresinski*); *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 235 [132 Cal.Rptr. 843].)

At the time of the *Halpin* decision, section 877.6 had not been enacted. There was no statutory procedure for a noticed hearing to determine whether a settlement was in good faith. Some cases held that a separate suit had to be brought. (*American Bankers Ins. Co.* v. *Avco-Lycoming Division* (1979) 97 Cal.App.3d 732, 734 [159 Cal.Rptr. 70]; *Lareau* v. *Southern Pac. Transportation Co.* (1975) 44 Cal.App.3d 783; 798-799 [118 Cal.Rptr. 837].) Others said it could be done as a defense in the original action. (*River Garden Farms, supra,* 26 Cal.App.3d at p. 1002.) Some cases stated in dicta that the parties were entitled to a jury trial. (*Lareau* v. *Southern Pac. Transportation Co., supra,* at p. 798, fn. 14.)

Section 877.6 was enacted to clarify these issues and to provide an expeditious procedure for a speedy determination of good faith after notice to all concerned. Thus *Halpin*'s concerns that a settlement after a verdict of liability, but before an assessment of damages, would lead to a "mad rush" to settle should vanish.

The facts in *Halpin* are very complex and convoluted. There was some question as to whether a settlement was ever reached. A separate action in a different county was filed to determine the issue and whether any settlement had been made in good faith. The Court of Appeal was sharply critical of the attorneys for defendants, stating in part that the verified complaint contained false allegations. (*Halpin, supra,* 14 Cal.App.3d at pp. 534-535.) From our analysis of *Halpin,* its result is best justified on the basis that if a settlement was ever reached, it was not made in good faith. Merely the fact that the defendant who brought the second suit refused to serve or notify the other defendant of the suit and trial justifies our conclusion. (*Id.* at p. 539.)

The Legislature intended the "good faith" concept to be "a flexible principle imposing on reviewing courts the obligation to guard against the numerous ways in which the interests of nonsettling defendants may be unfairly prejudiced." (*Rankin* v. *Curtis* (1986) 183 Cal.App.3d 939, 945 [228 Cal.Rptr. 753]; see also *River Garden Farms, supra,* 26 Cal.App.3d at p. 997, quoted with approval in *Tech-Bilt, supra,* 38 Cal.3d at pp. 494-495.) The "good faith" concept is sufficiently flexible to cover the present case,

because the "settlor's proportionate liability" is a key element in a good faith determination. (*Tech-Bilt, supra,* 38 Cal.3d at p. 499.) In other words, once liability was established, the purchase price for Lyon's freedom from indemnity actions necessarily increased. Pfister's concerns are legitimate, but *Tech-Bilt* addresses them. Based upon our analysis of the legislative history, we conclude that in enacting sections 877 and 877.6, the Legislature did not contemplate bifurcated trials where settlement is reached "before verdict or judgment." We do believe, however, that the Legislature was contemplating some kind of finality. A verdict on only one portion of a case in a bifurcated trial lacks such finality. So long as a jury still must decide issues essential to the rendering of a judgment, there is no such finality.

Our Supreme Court has made it clear that sections 877 and 877.6 are designed to further two equitable policies: (1) encouragement of settlement and (2) equitable allocation of costs among joint tortfeasors. (*Tech-Bilt, supra,* 38 Cal.3d at pp. 498-499; see also *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 604 [146 Cal.Rptr. 182, 578 P.2d 899].) "Those policies would be disserved by an approach which emphasizes one to the virtual exclusion of the other." (*Tech-Bilt, supra,* at p. 499.) To the extent *Halpin* is contrary to our holding here, we decline to follow it.

Pfister's reliance on *Teresinski, supra,* 190 Cal.App.3d 1393 is unavailing. To the extent it relies on *Halpin,* we disagree with *Teresinski.* Moreover, it is distinguishable because it was not a bifurcated trial. The verdict indeed was final, i.e., there was nothing more for the jury to decide. (*Id.* at p. 1399.)

Where, as here, there is a bifurcated trial against multiple defendants and a finding of liability, extending the benefits and protection of sections 877 and 877.6 to a settling defendant has multiple benefits to the parties and to the legal system in general. The settling tortfeasor and the plaintiff save the time and expense of litigating the issue of damages. In multiparty tort litigation, bifurcation provides an opportunity to settle once liability is found, because the settling defendant is no longer subjected to indemnity cross-complaints from alleged joint tortfeasors. Court time is also saved.

To adopt Pfister's position, on the other hand, would force all defendants in multiparty tort cases to litigate to the bitter end. Such a rule would thwart the legislative policy of encouraging settlements. That purpose is promoted by extending the protection of sections 877 and 877.6 to defendants who settle in good faith after a finding of liability but before the assessment of damages.

DISPOSITION

The judgment is affirmed. Lyon and Leaverton shall recover their costs on appeal.

Sills, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied May 17, 1993, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 1, 1993.