Opinion
 

 NOTT, J.
 

 I. Introduction
 

 In January 1991, appellant Nguon Seang Be was a passenger in a pickup truck that was traveling south on the Long Beach Freeway. At that same time, a 1980 truck manufactured by a European company called Magirus/ Iveco was traveling north on the freeway. The right rear outside wheel of the Magirus truck suddenly flew off and landed on the roof of the pickup truck in which Mr. Be was riding. The roof collapsed, and the wheel struck Mr. Be’s head. His neck was fractured, and he is paralyzed.
 

 Mr. Be and his wife, Siv Ly Be (hereafter both are referred to as Be), brought this action against many defendants, most of whom are not parties on appeal. Because of the limited issues on appeal, and because we have before us essentially two separate appeals from the judgment, we will review only the facts as pertinent to each in the discussions that follow.
 

 
 *1142
 
 II. The Be v. Western Truck Appeal
 
 *
 

 A., B.*
 

 III. The Iveco v. Penske Appeal
 

 A.
 
 Factual Background
 

 Iveco Trucks of North America, Inc., was named as a defendant in the complaint filed by Be. Iveco cross-complained against Penske Truck Leasing Company for indemnity. Iveco settled with Be for $1.5 million, and that settlement was found by the trial court to be in good faith. The Be case went to trial against the other defendants, and the jury awarded Be just over $12 million. The testimony referred to “misassembly” of the “Iveco wheel retention system.” Iveco was found to be 10 percent at fault. The jury did not make a finding with respect to fault by Penske, which was not a party to the main case, though the jury found that the percent of fault attributable to “others” was zero.
 

 Judgment on special verdict was entered January 13, 1994. On March 11, 1994, Penske filed a motion seeking determination that a $125,000 settlement between Penske and Be was a good faith settlement under Code of Civil
 
 [3]
 
 section 877. The trial court found the settlement to be in good faith and dismissed Iveco’s cross-complaint for indemnity against Penske pursuant to section 877.6.
 
 [4]
 

 Iveco appeals the ruling of the trial court, contending that section 877, by its plain language, applies only to preverdict settlements. We agree and hold that the trial court erred in granting Penske’s motion for good faith settlement and dismissal of the cross-complaint.
 

 
 *1143
 
 B.
 
 Discussion
 

 1.
 
 Standard of review.
 

 Ordinarily, the determination of whether a settlement is in good faith is left to the discretion of the trial court, and may be reversed only upon a showing of abuse of discretion.
 
 (Tech-Bilt, Inc.
 
 v.
 
 Woodward-Clyde & Associates
 
 (1985) 38 Cal.3d 488, 502 [213 Cal.Rptr. 256, 698 P.2d 159].) However, where, as here, the issue is one of statutory interpretation and application of the statute to undisputed facts, the question is one of law subject to the appellate court’s independent review.
 
 (Simpson
 
 v.
 
 Unemployment Ins. Comp. Appeals Bd.
 
 (1986) 187 Cal.App.3d 342, 350 [231 Cal.Rptr. 690].)
 

 2.
 
 Sections 877 and 877.6 do not permit good faith settlement on these facts.
 

 Section 877 provides, in pertinent part: “Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort ... it shall have the following effect: [5] (a). . . [I]t shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater. [50 It shall discharge the party to whom it is given from all liability for any contribution to any other parties.”
 

 Where the language of a statute is clear and unambiguous and its meaning plain, there is no need for statutory construction.
 
 (Southern Cal. White Trucks
 
 v.
 
 Teresinski
 
 (1987) 190 Cal.App.3d 1393, 1403 [236 Cal.Rptr. 159].) Only where the statute is ambiguous or uncertain is construction necessary.
 
 (Ibid.)
 
 Words in a statute must be given their usual, ordinary meanings.
 
 (Khan
 
 v.
 
 Medical Board
 
 (1993) 12 Cal.App.4th 1834, 1842 [16 Cal.Rptr.2d 385].)
 

 In
 
 Teresinski,
 
 where one defendant settled with the plaintiff and another was granted summary judgment, the matter went to trial against a third defendant only. The jury found that defendant liable for the plaintiff’s injuries. The plaintiff and that third defendant then entered into a settlement, a condition of which was that the judgment be vacated. The trial court vacated the judgment and the third defendant moved for a determination that its settlement was in good faith. The trial court granted the motion and dismissed the cross-complaints for indemnity filed by the other defendants.
 

 
 *1144
 
 On appeal, after analyzing the meanings of the words “before,” “verdict” and “judgment,” the
 
 Teresinski
 
 court reversed, holding that section 877 “applies only to settlements reached before liability is established by jury verdict or by judgment.” (190 Cal.App.3d at p. 1405.) The court also concluded that section 877.6, which prescribes the effects of a good faith settlement upon a claim for indemnity, “implements section 877.” The court noted that section 877.6 also employs the phrase “before verdict or judgment.” (190 Cal.App.3d at p. 1406.)
 
 [5]
 

 Teresinski's reading of sections 877 and 877.6 to apply only to settlements reached before verdict or judgment is supported not only by the plain meaning of the words of the statute, as
 
 Teresinski
 
 held, but also by the unfair result in this case. First of all, Penske knew when it settled with Be the amount of its exposure in the cross-complaint filed by Iveco. Penske also knew that it could no longer be sued by Be. Any amount Penske offered to Be would be a windfall, so Be would not necessarily drive a hard bargain. Nevertheless, that amount, however small, would protect Penske from having to pay anything at all to Iveco. Thus, by paying $125,000 to Be, Penske was able to discharge its potential exposure of $1.2 million from the cross-complaint. Penske had every advantage over Iveco when Penske settled with Be. Thus, the case presents a clear illustration of the wisdom of requiring that settlements be completed before judgment or verdict in order to be settlements in good faith. We therefore agree with
 
 Teresinski
 
 that postjudgment settlements are not permitted by section 877.
 

 Penske contends that
 
 Teresinski
 
 is distinguishable on its facts from this case, because there the jury determined the liability of the settling defendant and here the jury determined the liability of Iveco, not Penske. Penske asserts that
 
 Teresinski
 
 is not controlling and argues that we should apply the law as stated in several other cases,
 
 Halpin
 
 v.
 
 Superior Court
 
 (1971) 14 Cal.App.3d 530, 543 [92 Cal.Rptr. 329],
 
 Stambaugh
 
 v.
 
 Superior Court
 
 (1976) 62 Cal.App.3d 231, 235 [132 Cal.Rptr. 843], and
 
 Price Pfister, Inc.
 
 v.
 
 William Lyon Co.
 
 (1993) 14 Cal.App.4th 1643, 1646 [18 Cal.Rptr.2d 437]. We will analyze these opinions individually to determine their impact on this case.
 

 
 *1145
 
 a.
 
 Halpin
 
 v.
 
 Superior Court
 

 The facts of
 
 Halpin
 
 are quite complicated and difficult to summarize. Suffice it to say that in a bifurcated action filed in Shasta County against three defendants, the trial court determined liability against two, Warehouse and Hyster; that Warehouse thereafter filed an action in Sacramento County which alleged a separate good faith settlement between itself and the plaintiff, and Warehouse was granted an injunction to prevent the Shasta County court from proceeding against Warehouse; and the next day a jury was called to begin the damage phase of the Shasta County action. (14 Cal.App.3d at p. 538.) The question before the appellate court was the effect of the joint tortfeasor contribution statute (§§ 875-880) on the jurisdiction of the Sacramento County court. In its analysis, the court stated:
 

 “[T]he words of [section 877] ‘before verdict or judgment’ must be construed to mean: ‘before establishment of liability,’ with ‘verdict’ equated with such liability determination. A settlement between the plaintiff and a tortfeasor whose joint liability has been established is not one within the meaning of that section, and thus cannot effectively deprive the remaining tortfeasors of their rights to contribution.
 

 “A principal reason why that interpretation seems inevitable is this: were the rule to be established otherwise, there would unquestionably occur concurrently with the determination of joint liability a mad rush by one or more of the joint tortfeasors in an effort to settle and to obtain a release, thus thwarting the provisions of the contribution statute and the right of the other joint tortfeasors to obtain contribution from the settlers. . . .” (14 Cal.App.3d at p. 543.) The court also stated that “once . . . liability has been determined against all defendants jointly liable, then the provisions of the contribution statute within the obvious interest of the Legislature must be heeded.”
 
 (Id..,
 
 at p. 544, italics omitted.)
 

 The language of the
 
 Halpin
 
 opinion, therefore, does not support Penske’s reading of it, which is that
 
 Halpin,
 
 unlike
 
 Teresinski,
 
 places the focus on the status of the settling tortfeasor and holds that if the settling tortfeasor has had its liability established, it cannot enter into a good faith settlement. As in
 
 Teresinski,
 
 the liability of the settling defendant in
 
 Halpin
 
 had already been determined before the parties entered into the settlement agreement. Just as in
 
 Teresinski,
 
 there was no tortfeasor in
 
 Halpin
 
 who settled with the plaintiff after another defendant’s liability was determined. However,
 
 Halpin
 
 makes it even clearer than
 
 Teresinski
 
 that the purposes of the statute do not support allowing an alleged tortfeasor to wait until the liability of all defendants is determined before settling with the plaintiff and thereby depriving the defendants who have been found liable of their rights to contribution.
 

 
 *1146
 
 It is difficult to see how, under
 
 Hatpin,
 
 the matter before us is different from
 
 Teresinski
 
 just because Penske was not a defendant at trial. Penske argues that its liability to Be had not been determined at the time of settlement. The fact is, however, that Penske’s liability to Be is never going to be determined in an action brought by Be. That possibility is foreclosed by Be’s failure to name Penske in this lawsuit. By the verdict and judgment in this action, the liability of all possible tortfeasors to Be has been determined. Penske’s insistence that its liability is not yet fixed is merely theoretical. In actuality, Penske cannot be sued by Be for the injuries he suffered in the accident.
 
 (Takahashi
 
 v.
 
 Board of Education
 
 (1988) 202 Cal.App.3d 1464, 1473-1474 [249 Cal.Rptr. 578].) Therefore, permitting Penske’s postverdict settlement with Be promotes neither of the policies behind California’s tort contribution legislation identified by the Supreme Court in
 
 Tech-Bilt
 
 the equitable sharing of costs among the parties at fault and the encouragement of settlements.
 
 (Tech-Bilt, Inc.
 
 v.
 
 Woodward-Clyde & Associates, supra,
 
 38 Cal.3d at p. 494.) A settlement should be permitted to protect the settling tortfeasors from actions by joint tortfeasors for indemnity only if the settlement actually promotes the legislative purpose of avoiding trials. Where the settlement follows trial, that policy is not met. In that situation, there is no reason to override the policy of equitable sharing of costs among the parties at fault.
 

 In a related argument, Penske contends that no verdict or judgment was entered against him because the Iveco cross-complaint had not yet been tried. If, however, we interpret the statute to mean that a cross-complaint is an action in which settlement in good faith must be reached “before verdict or judgment,” then section 877.6 does not apply in this case. To begin with, sections 877 and 877.6 are unquestionably related statutes. (See, e.g.,
 
 Er-re ca’s
 
 v.
 
 Superior Court
 
 (1993) 19 Cal.App.4th 1475, 1487-1488 [24 Cal.Rptr.2d 156];
 
 Southern Cal. White Trucks
 
 v.
 
 Teresinski, supra,
 
 190 Cal.App.3d at p. 1403.) Statutes or statutory sections relating to the same subject must be harmonized both internally and with each other, to the extent possible.
 
 (Berkeley Center for Independent Living
 
 v.
 
 Coyle
 
 (1996) 42 Cal.App.4tii 874, 878 [50 Cal.Rptr.2d 39].) Section 877.6, subdivision (a)(1), provides for a hearing on the issue of good faith of a settlement “entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . .” If the action referred to in section 877 is limited to Iveco’s cross-complaint, Be is neither a plaintiff nor a claimant. Be has no relation to the cross-complaint, and therefore the settlement between Be and Penske could not be the subject of a good faith settlement hearing. Thus, if we were to interpret “before verdict or judgment” as Penske suggests, the Penske-Be settlement would not discharge Penske from liability for contribution to Iveco.
 

 
 *1147
 
 b.
 
 Stambaugh
 
 v.
 
 Superior Court
 

 The
 
 Stambaugh
 
 case is also cited by Penske for the proposition that the resolution of the issue before us depends on whether the liability of the settling tortfeasor has been established. Stambaugh was involved in a car accident which resulted in a death. Stambaugh settled with the heirs for the full amount of his insurance coverage even before an action was filed. The heirs sued Pacific Gas and Electric Company (PG&E), which then cross-complained against Stambaugh as an alleged joint tortfeasor. Stambaugh argued that he was entitled to summary judgment, and the Court of Appeal agreed, holding that under section 877, “[wjhere an alleged joint tortfeasor, prior to a judicial determination of his liability, in good faith settles the claim against him, he is forever discharged of further obligation to the claimant, and to his joint tortfeasors, by way of contribution or otherwise.” (62 Cal.App.3d 231, 235.)
 

 Penske seizes upon Stambaugh's phrase “prior to a judicial determination of his liability” to argue that a tortfeasor may make a good faith settlement at any time before a verdict or judgment is rendered against the settling tortfeasor.
 
 Stambaugh
 
 does not support that principle, however. The parties in
 
 Stambaugh
 
 settled before the action was even filed, much less after a verdict was returned, as happened in this case. Stambaugh was not a cross-defendant who was not a defendant. In addition,
 
 Stambaugh,
 
 unlike
 
 Teresinski,
 
 did not analyze the meaning of the phrase “before verdict or judgment” as it is found in section 877. That language was not at issue in
 
 Stambaugh,
 
 though it was in
 
 Teresinski
 
 and it is here. Thus,
 
 Stambaugh
 
 does not compel an affirmance of the trial court’s ruling, as argued by Penske.
 

 c.
 
 Price Pfister, Inc.
 
 v.
 
 William Lyon Co.
 

 In a bifurcated trial against two defendants, a special verdict finding liability was returned against one. Both settled with the plaintiff before the damage phase. Pfister, a cross-defendant, objected to the motions for an order finding the settlements to be in good faith. The court found good faith settlements, noting that the parties had negotiated over four days with two separate judges, and that Pfister declined the invitations to attend the negotiations. The plaintiff then filed a new action against Pfister, which cross-complained against the two former defendants who had settled. They in turn brought a motion to strike the cross-complaint, asserting that the good faith settlement barred Pfister’s claims against them. The Court of Appeal agreed with that argument, holding that “good faith” is a flexible concept and that the settlor’s proportionate liability is a key element in a good faith determination under
 
 Tech-Bilt.
 
 Thus, the court held that finding of liability as to one of the former defendants “necessarily increased” the price that defendant had
 
 *1148
 
 to pay to get out of the case but did not bar a good faith settlement.
 
 (Price Pfister, Inc.
 
 v.
 
 William Lyon Co., supra,
 
 14 Cal.App.4th 1643, 1648.) The court stated that it had reviewed the legislative history of sections 877 and 877.6 and understood that the Legislature was contemplating “some kind of finality. A verdict [based] on only one portion of a case in a bifurcated trial lacks such finality. So long as a jury still must decide issues essential to the rendering of a judgment, there is no such finality.” (14 Cal.App.4th at p. 1649.)
 

 The case before this court, of course, has the finality that was missing in
 
 Pfister.
 
 The jury returned a verdict determining both liability and damages.
 
 Pfister
 
 is distinguishable and by its own terms does not support Penske’s argument.
 

 Pfister
 
 and
 
 Halpin
 
 are inconsistent, as the
 
 Pfister
 
 court notes in its opinion, but the point is not argued by Penske. Since, however, this case was not a bifurcated action as
 
 Pfister
 
 and
 
 Halpin
 
 were, it is not factually on point with either case; and, more importantly, because neither
 
 Pfister
 
 nor
 
 Halpin
 
 supports the proposition for which they were cited to us by Penske, we need not attempt to reconcile them. We hold that neither
 
 Pfister
 
 nor
 
 Halpin
 
 permits the trial court to find that the settlement between Penske and Be was a good faith settlement under sections 877 and 877.6.
 

 d.
 
 Widson
 
 v.
 
 International Harvester Co.
 

 Penske also discusses
 
 Widson
 
 v.
 
 International Harvester Co.
 
 (1984) 153 Cal.App.3d 45 [200 Cal.Rptr. 136] and its holding that sections 877 and 877.6 apply where the settling tortfeasor is merely a cross-defendant in an action for indemnity and is not a defendant in the main action. Iveco does not raise that issue in its appeal, and there is no need to address
 
 Widson
 
 on that point. Penske argues that
 
 Widson
 
 permitted the settlement even though there had been a determination that, due to the running of the statute of limitations, the plaintiff could not sue the cross-defendant. That point is also not raised by Iveco. We note, however, that the settlement in
 
 Widson
 
 occurred before trial. Indeed, the
 
 Widson
 
 court stated that sections 877 and 877.6 “make it ‘very clear’ the cross-defendant in a multiparty suit may make a good faith settlement with the plaintiff
 
 before trial. (Fisher
 
 v.
 
 Superior Court
 
 [(1980)] 103 Cal.App.3d 434, 441 [163 Cal.Rptr. 47].)”
 
 (Widson
 
 v.
 
 International Harvester Co., supra,
 
 153 Cal.App.3d at p. 57, italics added.)
 

 In light of our conclusion that the settlement between Be and Penske could not be a good faith settlement under the statutes, we need not address
 
 *1149
 
 Penske’s final point, that the settlement met the criteria for good faith settlements under
 
 Tech-Bilt, Inc.
 
 v.
 
 Woodward-Clyde & Associates, supra,
 
 38 Cal.3d 488, 502.
 

 Disposition
 

 The trial court’s order finding the Be-Penske settlement to be in good faith under sections 877 and 877.6 and dismissing the Iveco’s cross-complaint is reversed. In all other respects, the judgment is affirmed. Costs on appeal are awarded to respondent Western Truck and to appellant Iveco.
 

 Boren, P. J., and Zebrowski, J., concurred.
 

 *
 

 See footnote,
 
 ante,
 
 page 1139.
 

 [3]
 

 All subsequent statutory references are to the Code of Civil Procedure unless otherwise stated.
 

 [4]
 

 “(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor ... for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. . . .” (§ 877.6.)
 

 [5]
 

 “(a)(l) Any party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors.... Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced.” (§ 877.6.)