[No. C025718. Third Dist. July 9, 1999.]

LANNY REED, Plaintiff and Respondent, v.
DENNIS WILSON et al., Defendants and Appellants.

---

## COUNSEL

Mackenroth, Ryan & Fong, Robert King Fong, David A. Carrasco and Kathleen T. Rogan for Defendants and Appellants.

Phillip A. Cooke for Plaintiff and Respondent.

## OPINION

**SCOTLAND, P. J.**—Zola Rhoades, Dennis Wilson and First Stop Realty (defendants) appeal from an order granting in part and denying in part their motion to set aside and/or to correct the judgment in favor of Lanny Reed (plaintiff). Defendants contend the trial court erred in declining to offset plaintiff's litigation costs as prevailing party by the amount of the good faith settlement that plaintiff received from other joint tortfeasors. In defendants' view, the reduction was required by Code of Civil Procedure section 877. (Further section references are to the Code of Civil Procedure unless specified otherwise.)

Section 877 provides for reduction of the "claims" against a tortfeasor by the amount "stipulated [in a good faith settlement between the plaintiff and another joint tortfeasor], or in the amount of the consideration paid for it whichever is greater . . . ." As we will explain, the word "claims" in section 877 ordinarily does not encompass costs awarded to the prevailing party after the issue of liability has been determined. Thus, a nonsettling defendant who loses at trial is not entitled to offset the settlement against the costs awarded to plaintiff as the prevailing party unless the plaintiff's compromise agreement with the settling joint tortfeasor covers costs of pursuing the action against the remaining defendant.

As defendants failed to establish the settlement agreement at issue in this case encompassed plaintiff's litigation expenses, the trial court correctly refused to offset the costs to which plaintiff was entitled as prevailing party against the nonsettling defendants. Accordingly, we shall affirm the judgment.

## FACTS

Plaintiff filed suit against Clifford and Helen Torbet, the Torbets' real estate broker, Dan Blosl, and Parish Termite Control (Parish), alleging negligence, fraud and breach of contract arising from the sale of the Torbets' fourplex to plaintiff.

At a pretrial settlement conference, plaintiff agreed to compromise and settle with the Torbets for $25,000, with Blosl for $10,000, and with Parish for $2,500—a total of $37,500. As best we can discern from the record provided on appeal, no apportionment was made for costs.

After the settlement conference, plaintiff amended the complaint to name defendants, who apparently represented her in the real estate transaction.[1] Thereafter, the trial court granted a motion for determination of good faith settlement to the Torbets, Blosl and Parish. (§ 877.6.)

Plaintiff proceeded to trial against defendants, and a jury found the parties were negligent in the following percentages: plaintiff and Parish were each 10 percent at fault; defendants were 30 percent at fault; Blosl was 20 percent at fault; and the Torbets were 30 percent at fault. The jury awarded $22,500 in economic damages. Because of the finding that plaintiff was 10 percent at fault, the court reduced the verdict to $20,250 and entered judgment accordingly.[2]

Plaintiff filed a memorandum of costs, and defendants moved to tax costs on various grounds, including that they were the prevailing parties because they had made a section 998 offer to compromise and plaintiff did not obtain a more favorable judgment after the settlement consideration of $37,500 was offset against the judgment pursuant to section 877. Defendants also moved to set aside and/or correct the judgment to reflect the section 877 offset, which reduced the judgment amount to zero. According to defendants, the entire settlement amount should be offset against plaintiff's costs in addition to her damages of $20,250.

---

[1]According to defendants' points and authorities in opposition to plaintiff's motion for good faith settlement, "plaintiff was represented by real estate agent Zola Rhoades, through broker Dennis Wilson and First Stop Realty."

[2]The jury also awarded plaintiff noneconomic emotional distress damages, but the trial court granted defendants' motion to strike those damages.

The trial court ruled: the judgment of $20,250 was offset by the $37,500 settlement, reducing the judgment to zero; nonetheless, plaintiff was the prevailing party and entitled to costs (see *Pirkig* v. *Dennis* (1989) 215 Cal.App.3d 1560, 1566 [264 Cal.Rptr. 494]; *Syverson* v. *Heitmann* (1985) 171 Cal.App.3d 106, 112-114 [214 Cal.Rptr. 581]); and defendants' section 998 offer had no effect as it was untimely.

The court awarded plaintiff costs of $7,635.60 and held that defendants were not entitled to offset these costs with the excess portion of the settlement remaining after the judgment was offset.

## DISCUSSION

■ Defendants do not contest that plaintiff is entitled to costs as the prevailing party; rather, they argue the trial court erred in not offsetting plaintiff's costs, claiming such a result is required by section 877.

■ Section 877 provides in pertinent part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater. [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties."

"Pursuant to section 877, a good faith settlement bars nonsettling defendants from seeking contribution from a settling defendant, but in return the nonsettling defendants' ultimate liability to the plaintiff is reduced by the amount stipulated by the release or by the amount of consideration paid." (*Arbuthnot* v. *Relocation Realty Service Corp.* (1991) 227 Cal.App.3d 682, 687 [278 Cal.Rptr. 135], citing *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 873 [239 Cal.Rptr. 626, 741 P.2d 124].) Section 877.6 provides an expeditious procedure for a speedy determination of good faith after notice to all concerned. (*Price Pfister, Inc.* v. *William Lyon Co.* (1993) 14 Cal.App.4th 1643, 1648 [18 Cal.Rptr.2d 437].)

Sections 877 and 877.6 are designed to promote the equitable sharing of costs among the parties at fault, and to encourage settlement. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 494-498 [213

Cal.Rptr. 256, 698 P.2d 159]; *Mattco Forge, Inc.* v. *Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1349 [45 Cal.Rptr.2d 581].) In addition, the offset provided for in section 877 assures that a plaintiff will not be enriched unjustly by a double recovery, collecting part of his total claim from one joint tortfeasor and all of his claim from another. (*Wouldridge* v. *Zimmerman* (1971) 21 Cal.App.3d 656, 658 [98 Cal.Rptr. 778].)

■ Section 877 does not expressly address litigation costs; it simply directs that "claims" against nonsettling defendants be reduced by the amount of the settlement consideration. Defendants contend that costs must be offset because they are encompassed in the term "claims." We disagree.

■ "In construing a statute, a court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . . To determine legislative intent, we first examine the words of the statute . . . , applying 'their usual, ordinary, and common sense meaning based [upon the language] used and the evident purpose for which the statute was adopted.' . . ." (*Townzen* v. *County of El Dorado* (1998) 64 Cal.App.4th 1350, 1355 [76 Cal.Rptr.2d 281], citations omitted.) "[T]he various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute." (*Nunn* v. *State of California* (1984) 35 Cal.3d 616, 625 [200 Cal.Rptr. 440, 677 P.2d 846].)

■ Section 877 refers to a release of one or more of a number of tortfeasors "claimed to be liable for the same tort" and states that a release of one party "shall not discharge any other party from liability" unless the release so specifies, "but it shall reduce the claims against the others" in the amount agreed upon in the release or in the amount of consideration paid for it, whichever is the greater.

Thus, the term "claims" appears to refer to a claim of liability. In the context of litigation, a claim of liability against another party generally connotes a cause of action for damages. (See Black's Law Dict. (5th ed. 1979) p. 224, col. 2.) In contrast, the term "costs" refers to "[a] pecuniary allowance, made to the successful party, (and recoverable from the losing party), for his expenses in prosecuting or defending an action or distinct proceeding within an action." (Black's Law Dict., *supra*, at p. 312, col. 2.) In other words, costs are not a claim of liability; they are awarded to the prevailing party after liability has been established or refuted. (*Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 677 [186 Cal.Rptr. 589, 652 P.2d 437].)

Applying these common meanings of the words "claims" and "costs," we conclude the word "claims" in section 877 generally refers to a claim of

liability for damages and not to costs awarded to a prevailing party after a claim of liability has been adjudicated. This interpretation is consistent with the purposes of sections 877 and 877.6 to promote the equitable sharing of costs among the parties at fault, and to encourage settlement.

Generally construing the word "claims" in section 877 to encompass costs would not promote the equitable sharing of costs because it would allow a defendant who is unsuccessful at trial to use a joint tortfeasor's settlement to offset the plaintiff's costs, even if those costs were incurred due to defendant's failure to settle. Moreover, such a construction would not encourage the defendant to settle the action.[3]

As we shall explain, our construction of the word "claims" in section 877 does not run afoul of the statute's purpose to assure that a plaintiff will not be enriched unjustly by a double recovery.

■■ Compromise agreements settle only such matters as appear clearly intended by the parties and do not extend to matters which the parties never intended to include therein, although existing at the time. (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d at p. 677.) Such agreements "ordinarily conclude all matters put in issue by the pleadings—that is, questions that otherwise would have been resolved at trial. . . . They do not, however, (absent affirmative agreement of the parties), conclude matters incident to the judgment that were no part of the cause of action." (*Ibid.*) Costs are allowed solely as an incident to the judgment and constitute no part of a judgment at the moment of its rendition. (*Ibid.*)

■■ Accordingly, a plaintiff does not get double recovery when obtaining costs from a remaining defendant, unless plaintiff's compromise agreement with the joint tortfeasor covers costs of pursuing the action against the remaining defendant.

Defendants disagree, citing *Regan Roofing Co.* v. *Superior Court* (1994) 21 Cal.App.4th 1685 [27 Cal.Rptr.2d 62] (*Regan Roofing Co.*) in support of their contention they are entitled to offset the settlement against costs.

In *Regan Roofing Co.*, a nonsettling defendant challenged the finding that plaintiffs' settlement with other joint tortfeasors was in good faith. (21

---

[3]On the other hand, construing the word "claims" to exclude costs does not encourage the plaintiff to settle because it allows him, as prevailing party against a remaining defendant, to recover costs without offset even if the verdict is less than plaintiff's settlement with other tortfeasors.

We resolve this dilemma (that neither interpretation advances the purpose of the statute more than the other) by construing the statute in accordance with the common meaning of its terms, which meaning is just as consistent with the legislative purpose as is the contrary interpretation.

Cal.App.4th at pp. 1693-1694.) Defendant argued the settlement was not in good faith because a portion of the consideration had been allocated to specific litigation costs and he would not be entitled to an offset for this portion of the settlement consideration. (*Id.*, at pp. 1708-1710.) The appellate court disagreed, noting the plaintiffs conceded that defendant "would receive an offset for the costs as allocated, based upon the trial court's statement at the [good faith] hearing that it would not allow double recovery through this settlement." (*Id.*, at p. 1709.)

Contrary to defendant's suggestion, *Regan Roofing Co.* does not hold that, even where costs are not a part of the consideration for the settlement, nonsettling defendants are entitled to offset plaintiff's cost against any portion of the settlement consideration which exceeds the judgment. The court in *Regan Roofing Co.* simply acknowledged that, where costs are a part of the settlement consideration, nonsettling defendants should get an offset. (Cf. *Armstrong World Industries, Inc.* v. *Superior Court* (1989) 215 Cal.App.3d 951, 955-958 [264 Cal.Rptr. 39].)

Here, plaintiff believed she had suffered damages of up to $150,000, but resolved the matter with the settling joint tortfeasors for $37,500. Defendants point to nothing in the record which indicates the settlement was intended to cover any of plaintiff's costs. Accordingly, the trial court correctly refused to offset the costs to which plaintiff was entitled as prevailing party against the nonsettling defendants.

### DISPOSITION

The judgment is affirmed.

Sims, J., and Davis, J., concurred.