Filed 3/27/17

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO
APPELLATE DIVISION

| | |
|---|---|
| JOSHUA and CHRISTINA EPPS<br>Plaintiffs and Respondents,<br><br>v.<br><br>BRUCE LINDSEY,<br>Defendant and Appellant. | Case No:  ACIAS 1600004<br>(Trial Court:  UDFS 1509971)<br><br>P E R  C U R I A M<br>O P I N I O N |

Appeal from a grant of summary judgment, San Bernardino County Superior Court, Fontana District, Lynn Poncin, Judge. Affirmed.

Anderson & LeBlanc, A.P.L.C.; Jeff LeBlanc for defendant and appellant.

Law Offices of Liddle & Liddle, APC; George Lee Liddle, Jr., Raymond Zakari, and Larsen E. Ensberg for plaintiffs and respondents.


**THE COURT:**

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Bruce Lindsey (Lindsey) appeals from a grant of summary judgment in favor of respondents Joshua and Christina Epps (the Epps). Lindsey and the Epps are, respectively, the defendant and plaintiffs in the underlying unlawful detainer action which arose from the Epps' post-foreclosure acquisition of the at-issue property.

1

The undisputed facts from below indicate Bank of America purchased the property during an April 2015 foreclosure sale. The property was security, under a deed of trust, for the repayment of a loan that was obtained by Lindsey's then-girlfriend, Linda Barbee (Barbee).[1] Following the foreclosure, Joshua Epps' parents purchased the property, on behalf of the Epps, at an online auction in August 2015. The property was then transferred the following month to the Epps, who lacked the liquidity to place an online bid themselves.[2] The Epps plan on using the property as their primary residence and, to that end, they have even listed their current residence for sale.[3]

Despite being served with a 90 day notice to quit, Lindsey refused to vacate the premises and the underlying suit was commenced.[4] The Epps then moved for summary judgment. In opposing the motion, Lindsey outlined what he admitted was a "convoluted" factual history between him and Barbee. Namely, the couple agreed to acquire the property together, but Barbee refused to place Lindsey on title. Then, at the end of their tumultuous relationship and in the face of foreclosure proceedings, Barbee quit claimed her interest to Lindsey for $5,000 and moved out. However, Lindsey contends the transfer was ineffective since Barbee never truly intended to transfer title and because she somehow continued to exercise

[1] Clerk's Transcript (CT) 14-15, 95-97, 103,
[2] CT 18-22, 100-102, 156
[3] CT 156
[4] CT 100 and 121

2

control over the property. Barbee then apparently used her "leverage" to "extort" money from Lindsey in the form of ten year lease to the property for $2,300 a month. [5]

Based on the written agreement, Lindsey opposed the motion for summary judgment and argued he was entitled to stay at the property for the duration of the lease. [6] Despite expressing concerns regarding Lindsey's credibility and his shifting positions regarding ownership, the trial court determined that Lindsey's version of the facts was not dispositive since the Epps were successors in interest under Code of Civil Procedure section 1161b. [7] As such, even assuming that Lindsey had a valid lease with Barbee, the trial court concluded that the Epps had no obligation to honor the lease and Lindsey failed to vacate the premises after expiration of the 90 days. [8] Lindsey now appeals the limited issue of whether the trial court correctly applied the undisputed facts to section 1161b. [9]

## DISCUSSION

**The Standard of Review**

We review the propriety of a grant of summary judgment *de novo*. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) In effect, we assume the role of a trial court and apply the same rules and standards

---

[5] CT 214-217
[6] Reporter's Transcript (RT) 33-34
[7] RT 41 and 43-44
[8] RT 43-44
[9] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

3

that govern a trial court's determination of a motion for summary judgment. (*Riverside County Comm. Facilities Dist. No. 87-1 v. Bainbridge 17* (1999) 77 Cal.App.4th 644, 652.) Although we would normally engage in the same three-step analysis required of the trial court, the argument raised by Lindsey through his appeal is simple: whether the trial court erred in applying Code of Civil Procedure section 1161b to undisputed facts. We similarly review *de novo* the trial court's application of a statute to undisputed facts. (See *Be v. Western Truck Exchange* (1997) 55 Cal.App.4th 1139, 1143.)

**Code of Civil Procedure section 1161b and Its Application**

Code of Civil Procedure section 1161b, subdivision (b)(1), provides that "tenants or subtenants holding possession of a rental housing unit under a fixed-term residential lease entered into before transfer of title at the foreclosure sale shall have the right to possession until the end of the lease term, and all rights and obligations under the lease shall survive foreclosure, except that the tenancy may be terminated upon 90 days' written notice to quit" if, as relevant here, "[t]he purchaser or successor in interest will occupy the housing unit as a primary residence."

In this case, even if we assume that Lindsey had a written lease agreement which preceded the foreclosure, the Epps had no obligation to honor the lease if they provided a 90 day notice to quit and if they were "the purchaser or successor in interest" who intended to "occupy the

4

housing unit as a primary residence." It is undisputed that the Epps provided the 90 day notice and that they intended to occupy the property as their primary residence. In fact, Lindsey even acknowledges that the Epps fit the ordinary or "general" definition of "successor in interest" since their title can be traced back to the foreclosure through the chain of title.[10] However, Lindsey disputes whether the Epps constitute "successors in interest" as the term is used in Code of Civil Procedure section 1161b.

"Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning." (*Park Medical Pharmacy v. San Diego Orthopedic Associates Medical Group, Inc.* (2002) 99 Cal.App.4th 247, 250-251.) "If the language of a statute is clear, we must follow its plain meaning. [Citation.] If, however, the language is susceptible to more than one reasonable interpretation, then we look to 'extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'" (*Ibid.*)

Here, the term "successor in interest" is not defined by section 1161b. Black's Law Dictionary (10th ed. 2014) defines the term as "[s]omeone who follows another in ownership or control of property. A

---

[10] Opening Brief at p. 12

successor in interest retains the same rights as the original owner, with no change in substance." The Epps followed Bank of America in ownership, but they did not do so immediately. Section 1161b is potentially susceptible to differing interpretations since "successor in interest" is not qualified by terms like "immediate," "ultimate," or "eventual." On the other hand, section 1161b uses the definite article "the" before "purchase or successor in interest." The word "the" is used as a "function word" to indicate "that a following noun or noun equivalent is definite or has been previously specified by context or by circumstances" or the word indicates "that a following noun or noun equivalent is a unique or particular member of its class." (Merriam Webster's Collegiate Dictionary (11th ed. 2003).)

The successor in interest then-owning the property, intending to reside there, and who provides the notice to quit is the successor in interest who would have the most significance in relation to the statute or who would be the most unique amongst all others within the chain of succession. To hold that the statute is only referencing the successor in interest that immediately succeeded the purchaser would be nonsensical since one who simply appears within the chain of succession, but who does not currently hold the ownership rights, could not terminate the lease.

Also, if the legislature intended to limit the exception outlined in 1161b to only the purchaser's "immediate successor" it could have done so. For instance, the code section which immediately follows section

6

1161b obligates the "immediate successor in interest" to provide the type of advisory notice outlined by the statute. (Code Civ. Proc., § 1161c.) Although the term, as used in section 1161c, is actually a reference to the purchaser, the use of the phrase "immediate" still demonstrates that if the legislature wanted to specifically limit the exception under section 1161b to one specific successor within the chain of title, it could have done so. The absence of such limiting language suggests that the term "successor in interest" is not limited to purchaser's immediate successor in interest, but to "the" ultimate or most significant successor in interest who then-owns the property intending to reside there and who provides the notice to quit.

The term "new owner" is also used within the legislative scheme. For instance, Lindsey argues that "[t]he notice language required by Civil Code section 2924.8 provides important guidance on how the legislature intended section 1161b to apply." Civil Code section 2924.8 obligates the "trustee or authorized agent" to post and mail a notice which advises the residents of the property that "[i]f you have a fixed-term lease, the new owner must honor the lease unless the new owner will occupy the property as a primary residence or in other limited circumstances." (See similar language in Code Civ. Proc. § 1161c.) Thus, Lindsey argues that the phrase "successor in interest" does not include just any "owner" within the chain of title because such a conclusion would mean there is no distinction between the legislature's differing usages of the two terms.

7

However, the legislative history undermines Lindsey's position and only serves to support the trial court's ruling. Assembly Bill 2610 simultaneously amended both Civil Code section 2924.8 and Code of Civil Procedure section 1161b. The author of the bill indicated the increasing number of foreclosures had resulted in tenants facing the "specter of sudden dislocation of themselves, their families and their belongings. Renters are usually the last to know of foreclosure, and many renters, including families with children, are ending up homeless due to foreclosure evictions." (2011 California Assembly Bill No. 2610, California 2011-2012 Regular Session.) The author further indicated "tenants are often confused or misled about their legal protections, and how long they have to move when served with a notice to vacate after a foreclosure sale. AB 2610 would help alleviate the debilitating, sudden upheaval of Californians who reside in foreclosed properties by eliminating the inconsistency, confusion and abuse of existing laws intended to protect them." (*Ibid.*)

Notably, the author also specifically stated that the bill would "require purchasers of foreclosed homes to give tenants at least 90 days before commencing eviction proceedings; allow tenants in foreclosed homes under a residential lease to stay until the end of the lease term, except in cases where the **new owner** plans to use the property as their primary residence…." (2011 California Assembly Bill No. 2610, California 2011-2012 Regular Session [emphasis added].) When Civil Code sections

8

2924.8 and Code of Civil Procedure section 1161b are read in connection with the legislative history, it is apparent the terms "successor in interest" and "new owner" can be used interchangeably, with the latter term being more easily understood by a lay person and being reserved for the language of the tenant notices because tenants had been historically susceptible to confusion.

We see no problem with allowing a successor in interest that is two steps removed from the foreclosure sale from exercising the same rights afforded under section 1161b to the "purchaser" or the purchaser's immediate successor.[11] This is especially true where the immediate successor acquired the property on behalf of the ultimate successor. There is nothing within the language of section 1161b which indicates the Epps did not succeed to every ownership right that Bank of America acquired during the foreclosure. "[T]he general rule is that foreclosure of a senior encumbrance terminates subordinate liens, including leases." (*Nativi v. Deutsche Bank National Trust Company* (2014) 223 Cal.App.4th 261, 272.) Although section 1161b turns the general rule into the exception when certain conditions are met, the statute does not preclude the Epps

---

[11] This would of course assume that the tenant had been residing at the property all along without the acceptance of rent by the purchaser or its successor in interest. We also see no problem with the fact that the Epps acquired their interest several months after the foreclosure since the facts do not indicate Lindsey tendered any rent that was accepted, meaning the Epps never lost their right to evict Lindsey under section 1161b.

from exercising their predecessors' right to terminate the tenancy under the conditions imposed by section 1161b.

Finally, although the statute was enacted in-part to address the concern that unsuspecting tenants were being evicted despite paying their rent, the statute's exception suggests that the legislature intended to give the post-foreclosure owner, who doubles as a would-be resident, preference over a non-defaulting tenant whose interest would have otherwise been extinguished by the foreclosure. This is especially true given that the purpose of the statute is furthered based on the fact that the Epps were required to provide the 90 day notice. Therefore, the trial court correctly applied the undisputed facts to the law.

## **DISPOSITION**

For all these reasons, the grant of summary judgment is affirmed.


_____
ARTHUR HARRISON
Acting Presiding Judge of the Appellate Division


_____
ANNEMARIE PACE
Judge of the Appellate Division


_____
CARLOS CABRERA
Judge of the Appellate Division