[No. B203923. Second Dist., Div. Eight. Aug. 12, 2009.]

INDRA S. JHAVERI et al., Plaintiffs and Respondents, v.
STEVEN TEITELBAUM et al., Defendants and Appellants.

**Counsel**

Benedon & Serlin, Gerald M. Serlin and Kelly R. Horwitz for Defendants and Appellants.

Hornberger & Brewer, Nicholas W. Hornberger, Michael Brewer and Wesley W. Chang for Plaintiffs and Respondents.

**Opinion**

**FLIER, J.**—Steven Teitelbaum (Teitelbaum) and Los Angeles Coin Company LLC (L.A. Coin Company) appeal from an order of the trial court directing respondents Indra S. Jhaveri and Mary Jhaveri, doing business as Kant-Sar International (the Jhaveris), to execute and deliver to appellants a partial satisfaction of the judgment entered in this case.

The Jhaveris previously obtained a jury verdict against appellants and their codefendant, Brian Dubois (Dubois) in the total amount of $5.2 million, and the court entered a judgment for that sum together with prejudgment interest.[1]

---

[1] For discussion purposes, all sums are rounded out to their approximate amount.

The judgment consisted of (1) compensatory damages of $1.2 million against all defendants, jointly and severally, for breach of contract and fraud; (2) punitive damages in the sums of $1 million against Dubois individually, $2 million against Teitelbaum individually and $1 million against L.A. Coin Company; and (3) prejudgment interest.

In a nonpublished opinion, *Jhaveri v. Teitelbaum* (Nov. 28, 2007, B182898) (*Jhaveri I*), we affirmed the judgment in part and reversed in part. We affirmed the jury's award of compensatory and punitive damages, but we reduced the amount of prejudgment interest awarded by the court.

The Jhaveris brought a separate enforcement action (*Jhaveri II*), alleging Teitelbaum and Dubois conspired with their wives (Cherie Teitelbaum and Connie Dubois), L.A. Coin Company and others to fraudulently convey property to avoid payment of the underlying judgment. As described more specifically, *post*, the Duboises entered into a global settlement of *Jhaveri I* and *Jhaveri II* with the Jhaveris for the sum of $1 million. The Duboises paid only a portion of the settlement sum, $245,000, to the Jhaveris before filing for bankruptcy. Appellants filed a motion in the court below to compel the Jhaveris to execute and deliver a partial satisfaction of judgment in the present action, in the amount of one-half the face amount of the settlement, or $500,000. The court below ordered the Jhaveris to execute and deliver a partial satisfaction of judgment in the amount of one-fourth of the sums actually received by the Jhaveris under the settlement agreement, about $61,000.

Appellants appeal from the court's order, asserting that no substantial evidence supports the order and that the trial court incorrectly applied statutory provisions in allocating the amount of credit against the judgment. We disagree and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

### 1. *Underlying Judgment*

The Jhaveris filed *Jhaveri I* against appellants and Dubois for breach of contract and fraud, obtaining a jury verdict in their favor for a total of $5.2 million, as noted above. Just prior to the verdict in *Jhaveri I*, the Jhaveris discovered Teitelbaum and Dubois had transferred community real property into the name of each wife, as her sole and separate property, and made other conveyances to avoid collection of any judgment the Jhaveris might obtain in this action.

## 2. *Fraudulent Conveyance Action*

In December 2004, the Jhaveris filed the *Jhaveri II* action for fraudulent conveyances including as defendants Teitelbaum, Dubois, their spouses, L.A. Coin Company and others acting with them. In *Jhaveri II*, the Jhaveris alleged the defendants participated in fraudulent property transfers in violation of the Uniform Fraudulent Transfer Act (Civ. Code, §§ 3439–3439.12) (UFTA) as part of a larger conspiracy to avoid paying the judgment in *Jhaveri I*. In addition to equitable remedies, the complaint prayed for general, special and punitive damages against all defendants. The Jhaveris sought to recover at least $2 million, as well as compensatory and punitive damages, from Dubois and his wife, Connie.

## 3. *Settlement by Duboises*

In July 2005, the Jhaveris and the Duboises submitted to a court-ordered mediation in *Jhaveri II*. Appellants chose not to participate in the mediation. As a result of the mediation, the Jhaveris agreed to settle their claims against the Duboises globally for the sum of $1 million. As part of the settlement agreement, the Duboises agreed to assist the Jhaveris in collecting the *Jhaveri I* judgment and in prosecuting *Jhaveri II*.

The Jhaveris served notice of this settlement on appellants in September 2005.[2]

The Duboises paid the Jhaveris $245,000 under the settlement agreement before filing for bankruptcy in November 2006.

## 4. *Motion for Good Faith Settlement in Fraudulent Conveyance Action*

In September 2005, appellants brought a motion in *Jhaveri II* for a determination of the good faith of the settlement between the Jhaveris and the Duboises under Code of Civil Procedure section 877.6, subdivision (a).[3] The court deferred ruling on the motion ordering further briefing regarding the allocation of the settlement and the financial condition of the Duboises. However, before the court could hear and issue a ruling on the continued

---

[2] In September 2005, the Jhaveris also filed a first amended complaint in *Jhaveri II*. The amended complaint removed the Duboises as defendants and added causes of action for violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(a) et seq.; RICO), conspiracy to defraud creditors, and successor liability.

[3] Code of Civil Procedure section 877.6 provides in pertinent part: "(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff . . . and one or more alleged tortfeasors . . . , upon giving notice . . . ." All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

motion, the Duboises filed a notice informing the court of their bankruptcy filing automatically staying any proceedings against them.

## 5. *Motion for Execution of Partial Satisfaction of Judgment*

Appellants returned to the court below in August 2007. They moved for an order requiring the Jhaveris to file an acknowledgment of partial satisfaction of judgment in the amount of $500,000, to be credited against the $1 million compensatory damages award entered jointly and severally against appellants and Dubois in the present action. (§ 724.110, subd. (b).)

The parties stipulated that the Jhaveris' settlement with the Duboises contemplated they would jointly pay the Jhaveris $1 million. The parties further stipulated that the settlement agreement was silent on how the $1 million should be allocated as between the Duboises in *Jhaveri II* and as between compensatory and punitive damages in *Jhaveri I* and agreed that no other court had adjudicated the issue of allocation.

Appellants argued the face amount of the settlement, i.e., $1 million, should be allocated equally between the joint and several liability for compensatory damages and Dubois's separate liability for punitive damages in *Jhaveri I*, so that $500,000 of the settlement should be allocated to economic damages and $500,000 to Dubois's separate liability for punitive damages. Thus, they argued $500,000 should be credited to the economic damages awarded in *Jhaveri I*. The Jhaveris, on the other hand, argued that because Connie Dubois also was a party to the settlement and benefited from the dismissal with prejudice of the claims asserted against her in *Jhaveri II*, half the settlement funds should be attributed to extinguishing her obligations, half attributed to Dubois's liability in *Jhaveri I*, with half of that amount, i.e., one-fourth of the amount paid or $61,000, being credited to Dubois's joint and several liability for the economic damages in *Jhaveri I*.[4]

The court indicated the issue before the court was not what rights appellants would have in a suit for contribution against Dubois "or vice versa," nor was the court being asked to make an after-the-fact determination

---

[4] In response to the trial court's specific inquiries, counsel for the Jhaveris indicated they sought a declaration in *Jhaveri II* that the fraudulently conveyed properties were subject to execution to satisfy their judgment in *Jhaveri I*. Beyond a lien against the properties, the Jhaveris contended that the Duboises were also liable under RICO (18 U.S.C. § 1961 et seq.). The Jhaveris contended they were entitled to elect between equitable remedies and monetary damages in *Jhaveri II*, and were not limited to the assertion of a lien over the assets in question. Counsel informed the court that because Connie Dubois had executed a stipulated judgment in *Jhaveri II*, she was a potential judgment debtor and the more valuable defendant, as many of the assets were held solely in her name.

whether the "not yet adjudicated" settlement by Dubois was a good faith settlement for purposes of extinguishing any claims for contribution.

The court reasoned that the first issue presented was whether the judgment debtors were entitled to credit for the amounts *actually paid* under the settlement agreement, rather than the amounts *agreed to be paid* but that in fact were not paid. Appellants argued they were entitled to the benefit of section 877, which provides when fewer than all joint tortfeasors settle with a claimant, the claims against the nonsettling tortfeasors are reduced by "the amount of the *consideration* paid." (Italics added.) Appellants contended the reference in the statute to "consideration" paid should be construed as meaning the face amount of the contract, rather than cash received. The court ruled under general principles of equity and economics the judgment debtors should receive credit only for amounts *actually paid* under the settlement agreement, the same method used for purposes of cutting off accrual of interest on a judgment.

The trial court indicated the second issue presented was whether the amount of credit should be reduced by one-half to reflect Connie Dubois's "buying her peace" and whether some or all of that amount should be viewed as having to do only with judgment debtor Dubois's "buying his p[ea]ce." The court concluded that, in the absence of clarity between the parties, an equal apportionment between Dubois and his wife would be equitable, given that the next suit was pending and Connie Dubois was at risk as the person in nominal possession of the assets. The court found that Connie Dubois was "independently at risk and had a personal, financial interest to be protected by obtaining the settlement in *Jhaveri* [*II*]." Thus, it determined one-half the settlement funds received should be attributed to extinguishing Dubois's liability in *Jhaveri I* and one-half to extinguishing Connie Dubois's obligations in *Jhaveri II*.

### 6. *Order for Partial Satisfaction of Judgment and Appeal*

Noting that the jury in *Jhaveri I* had awarded punitive damages against Dubois in an equal ratio to the amount of compensatory damages awarded, the court attributed one-fourth of the settlement payments received to Dubois's joint and several liability for compensatory damages and one-fourth of such payments to his separate punitive damages liability in *Jhaveri I*.[5] The

---

[5] As appellants note, the respondents' brief incorrectly indicates that the trial court (1) reduced the Duboises' liability by $122,000, or one-half of the settlement payment, (2) reduced the liability of Teitelbaum and L.A. Coin Company by $61,000, or one-fourth of the settlement payment, and (3) reduced the liability of Cherie Teitelbaum and her management company by $61,000, or one-fourth of the settlement payment, resulting in a $61,000 offset for appellants. This is not an accurate portrayal of the trial court's ruling, as we note.

parties did not dispute that only one-half of the amount attributed to Dubois's liability would be subject to credit against the judgment.[6]

The court therefore ordered the Jhaveris to prepare, serve and file a partial satisfaction of judgment in the amount of $61,000 as of the date the money was paid.

In compliance with the trial court's order, the Jhaveris executed, served and filed a notice of partial satisfaction of the *Jhaveri I* judgment in the sum of $61,000.[7]

Appellants timely appealed the court's order.

## CONTENTIONS

Appellants essentially contend (1) the trial court erred in failing to credit the entire amount of the $1 million settlement against the judgment, (2) the Jhaveris are judicially estopped by their statements in *Jhaveri II* from asserting any amount less than $500,000 should be credited towards the judgment, and (3) there was no substantial evidence to support any allocation to Connie Dubois's liability.

## STANDARD OF REVIEW

On appeal, we will uphold the factual findings supporting the trial court's decision on a motion for satisfaction of judgment if the findings are supported by substantial evidence. (*George S. Nolte Consulting Civil Engineers, Inc. v. Magliocco* (1979) 93 Cal.App.3d 190, 193–194 [155 Cal.Rptr. 348].) We will presume the existence of every fact the finder of fact could reasonably deduce from the evidence in support of the judgment or order. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) Moreover, the constitutional doctrine of reversible error requires that "[a] judgment or order of the lower court [be] presumed correct." (*Nelson v. United Technologies* (1999) 74

---

[6] Appellants agreed that a 50-50 apportionment of the settlement between the joint and several economic damages awarded and punitive damages against Dubois would be "reasonable," and they admittedly sought no credit on the amount of punitive damages that was awarded against them.

[7] In their reply brief, appellants argue the Jhaveris failed to fully disclose the consideration they received in settlement. They argue that a passing reference was made in the trial court to the Jhaveris' receipt of Connie Dubois's properties as securities and point to "bankruptcy court filings" outside the record that supposedly show the Jhaveris received "secured debt" of $755,000 in addition to $245,000 cash. Appellants mistake the function of this court. Such "evidence," if such there be, should have been presented in the trial court. On appeal, we look only to evidence properly before the trial court at the time of hearing and that is properly part of the record on appeal. (*Kaplan v. Hacker* (1952) 113 Cal.App.2d 571, 574 [248 P.2d 464].)

Cal.App.4th 597, 605–606 [88 Cal.Rptr.2d 239].) Therefore, all intendments and presumptions must be indulged to support the judgment or order on matters as to which the record is silent, and error must be affirmatively shown. (*Ibid.*) The appellant has the burden to demonstrate there is no substantial evidence to support the findings under attack. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

The interpretation of a statute is a question of law, which we review de novo. (*Esther B. v. City of Los Angeles* (2008) 158 Cal.App.4th 1093, 1099 [70 Cal.Rptr.3d 596].)

■ A trial court's decision to apply a credit in partial satisfaction of the judgment is an exercise of the court's equitable discretion. (*Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1048 [85 Cal.Rptr.3d 865].) An abuse of discretion occurs when, in light of applicable law and considering all relevant circumstances, the court's ruling exceeds the bounds of reason. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339] (*Shamblin*); *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193] (*Denham*).)

## DISCUSSION

### 1. *Application of Section 877 to Postjudgment Settlement*

The court in *Jhaveri II* never determined whether the settlement between the Jhaveris and the Duboises was reached in good faith. Appellants contend that regardless of whether the settlement was found to be in good faith, pursuant to section 877 the trial court should have reduced the claims against appellants by the $1 million amount that the Duboises promised to pay the Jhaveris in the settlement agreement. We disagree, finding section 877 inapplicable to the facts at hand.

Section 877, provides, in pertinent part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith *before verdict or judgment* to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in *the amount stipulated* by the release, the dismissal or the covenant, or in *the amount of the consideration* paid for it *whichever is the greater.*" (Italics added.)

The Jhaveris essentially contend that section 877 is not applicable to this case. The Jhaveris argue at length that section 877 is part of a statutory

scheme governing only "contribution among joint tortfeasors" (see 17A West's Ann. Code Civ. Proc. (1980 ed.) tit. 11, ch. 1, §§ 875–880, p. 600, capitalization omitted), and therefore section 877 does not provide a "remedy" against an injured plaintiff. We agree with the Jhaveris, but for a more basic reason.

■ When the language of the statute is clear and unambiguous and its meaning plain, there is no need for statutory construction. (*Be v. Western Truck Exchange* (1997) 55 Cal.App.4th 1139, 1143 [64 Cal.Rptr.2d 527] (*Be*).) In this case, the intent of the Legislature is plain, as the words in the statute are clear and unambiguous. We need not examine the context of section 877 to construe its meaning. ■ Section 877 clearly and unambiguously states it applies to a "release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment . . . given in good faith *before verdict or judgment* to one or more of a number of tortfeasors . . . ." (Italics added.) Section 877 thus applies only to a settlement entered into with a cotortfeasor before a verdict or judgment. This interpretation is supported by established case law. (*Be, supra,* 55 Cal.App.4th at p. 1146; *Southern Cal. White Trucks v. Teresinski* (1987) 190 Cal.App.3d 1393, 1402 [236 Cal.Rptr. 159]; *Halpin v. Superior Court* (1971) 14 Cal.App.3d 530, 543 [92 Cal.Rptr. 329].) Similar considerations bear upon section 877.6, which contains comparable language and complements section 877. (*Teresinski, supra,* at p. 1406.)

■ The court in *Be* declared that "[a] settlement should be permitted to protect the settling tortfeasors from actions by joint tortfeasors for indemnity only if the settlement actually promotes the legislative purpose of avoiding trials." (*Be, supra,* 55 Cal.App.4th at p. 1146.) When a settlement is reached only after a trial and judgment, those policy goals can no longer be satisfied. In that situation, the common law policy of equitable sharing of costs among the parties at fault should prevail. (See *ibid.*)

There is no dispute that the settlement between the Jhaveris and the Duboises occurred *after* not before the judgment. By their plain terms, sections 877 and 877.6 do not govern the settlement in this case, and the trial court properly concluded in determining the appropriate credit to be given against the judgment that those statutes do not apply. (*Be, supra,* 55 Cal.App.4th at pp. 1145–1148 [distinguishing settlements made " 'before verdict or judgment' " from settlements after judgment]; *Torres v. Xomox Corp.* (1996) 49 Cal.App.4th 1, 39 [56 Cal.Rptr.2d 455] ["authorities applicable to good faith settlements do not apply to settlements which occur after damages have been awarded"]; *Winzler & Kelly v. Superior Court* (1975) 48 Cal.App.3d 385, 394 [122 Cal.Rptr. 259] [§ 877 operative "where the release is before judgment"].) We accordingly reject appellants' arguments premised on the applicability of sections 877 and 877.6.

The cases appellants rely upon in their briefs all deal with prejudgment settlements under sections 877 and 877.6, and thus they are inapplicable to the postjudgment settlement at issue here. (See, e.g., *Dillingham Construction, N.A., Inc. v. Nadel Partnership, Inc.* (1998) 64 Cal.App.4th 264, 287 [75 Cal.Rptr.2d 207]; *Erreca's v. Superior Court* (1993) 19 Cal.App.4th 1475, 1481 [24 Cal.Rptr.2d 156]; *Arbuthnot v. Relocation Realty Service Corp.* (1991) 227 Cal.App.3d 682, 689 [278 Cal.Rptr. 135]; *Knox v. County of Los Angeles* (1980) 109 Cal.App.3d 825, 831–832 [167 Cal.Rptr. 463].)

2. *Judicial Estoppel Doctrine Inapplicable*

Appellants assert that, at the minimum, the doctrine of judicial estoppel should be applied to reduce the claims against appellants by $500,000 because the Jhaveris previously took the position in *Jhaveri II* that their claims should be credited in such amount by the Duboises' settlement. We disagree, for several reasons, not the least of which is that the factual prerequisite to invoke the doctrine is not present here.

■ The judicial estoppel doctrine precludes a party from gaining a litigation advantage by espousing one position and then seeking a second advantage by taking an incompatible position. (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986 [12 Cal.Rptr.3d 287, 88 P.3d 24].) The dual purposes of the doctrine are to maintain the integrity of the judicial system and protect parties from unfair strategies of their opponents. (*Ibid.*) Judicial estoppel is an equitable doctrine, and its application is discretionary. (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422 [30 Cal.Rptr.3d 755, 115 P.3d 41]; *Aguilar, supra,* at p. 986.)

Appellants assert the Jhaveris previously took the position that $500,000 of the settlement payment "would be allocated to the joint and several compensatory damages awarded in *Jhaveri I* and the remaining $500,000 [would] be allocated to the punitive damages awarded against Dubois in that action." Appellants state the trial court "seemingly accepted" the Jhaveris' position as true, but it refused to rule on the good faith settlement motion because the Duboises had filed for bankruptcy. The record does not support appellants' assertions.

In a memorandum of points and authorities filed with respect to appellants' motion for good faith settlement in *Jhaveri II*, the Jhaveris argued to the court that the $1 million settlement amount should be allocated, one-half to economic damages and one-half to punitive damages, so as to be consistent with the jury's allocation of punitive damages against Dubois in an amount equal to the economic damages award.

Although the Jhaveris' statement was made in a judicial proceeding, the Jhaveris were not "successful" in taking this position, because the Duboises

filed for bankruptcy before the trial court made any substantive ruling on the motion for good faith settlement.[8] The delay in ruling was not attributable to any conduct of the Jhaveris. Moreover, the position the Jhaveris took in *Jhaveri II* is not wholly inconsistent with their present position. In previously suggesting the $1 million settlement should be allocated 50 percent to economic damages and 50 percent to punitive damages, the Jhaveris were focused on the liability of Dubois alone. Their present position, as the trial court below found, still allocates amounts received in settlement from the Duboises 50 percent to economic damages and 50 percent to punitive damages with respect to Dubois. The only difference is that the apportionment now further takes into account Connie Dubois's independent liability in *Jhaveri II* for allegedly participating in the fraud on creditors and the Duboises' intervening petition for bankruptcy. When they suggested allocating the settlement sums, the Jhaveris could not have predicted the Duboises would file for bankruptcy, almost a year later and without paying the agreed amounts in settlement.

This case therefore is not an appropriate one in which to apply the doctrine of judicial estoppel.

### 3. *Partial Satisfaction of Judgment*

■ An order under section 724.110 directing a plaintiff to execute and deliver a partial satisfaction of judgment is the appropriate means by which a codebtor on a judgment may be credited with money received by the plaintiff in offset against the judgment. (See *Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1513 [236 Cal.Rptr. 59] [motion for acknowledgment of satisfaction or partial satisfaction of judgment is appropriate means of claiming surplus from proceeds of trustee's sale of secured property as offset against outstanding judgment].)

■ Section 724.110, subdivision (a) in pertinent part provides that "[t]he judgment debtor . . . may serve on the judgment creditor a demand in writing that the judgment creditor execute, acknowledge, and deliver an acknowledgment of partial satisfaction of judgment to the person who made the demand." Pursuant to subdivision (b) of section 724.110, "[i]f the judgment creditor does not comply with the demand within the time allowed, the judgment debtor . . . may apply to the court . . . for an order requiring the judgment creditor to comply with the demand. . . . If the court determines that the judgment has been partially satisfied and that the judgment creditor has not

---

[8] Although it is asserted the trial court agreed with the Jhaveris, the record before us does not reflect that the court ever entered a substantive ruling on the motion for good faith settlement. The court's informal comments that may have been made during a hearing carry no precedential value in the absence of a formal ruling.

complied with the demand, the court shall make an order determining the amount of the partial satisfaction and may make an order requiring the judgment creditor to comply with the demand." The acknowledgment of partial satisfaction "shall contain . . . [¶] . . . [¶] [a] statement of the amount received by the judgment creditor in partial satisfaction of the judgment." (§ 724.120, subd. (e).)

The trial court correctly proceeded to credit appellants with the postjudgment settlement under section 724.110, subdivision (b).

### 4. *Credit Against Judgment*

Appellants contend the trial court improperly offset the amount of the reductions to which they were entitled, when it limited the offset to the amount actually collected and further reduced the offset by allocating part of the settlement to Connie Dubois's liability. We conclude that substantial evidence supports the trial court's finding that appellants are entitled to a $61,000 credit against the judgment and that the court did not abuse its discretion in directing the Jhaveris to execute a partial satisfaction of judgment for that amount in equitable setoff.

To prevent a double recovery, equity demands credit be given for payments received on the judgment. Such a balance acts as an offset against the judgment. "At common law, a setoff is based upon the equitable principle that parties to a transaction involving mutual debts and credits can strike a balance between them." (*Wade v. Schrader, supra,* 168 Cal.App.4th at p. 1048, citing *Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 859 [72 Cal.Rptr.2d 525].) Setoffs routinely are allowed in actions to enforce a money judgment. (*Keith G., supra,* at p. 859.) The right of offset rests upon the inherent power of the court to do justice to parties appearing before it. (*Id.* at p. 860; *Salaman v. Bolt* (1977) 74 Cal.App.3d 907, 918 [141 Cal.Rptr. 841].) A motion to compel acknowledgment of satisfaction or partial satisfaction of a judgment (§§ 724.050, subd. (d), 724.110, subd. (b)) is an entirely acceptable procedure for seeking an offset against a judgment. (See *Wade, supra,* at p. 1048; 8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, § 393, p. 420.)

It is the rule that "if one joint tortfeasor satisfies a judgment against all joint tortfeasors the judgment creditor cannot obtain a *double recovery* by collecting the same judgment from another of the tortfeasors." (*Neubauer v. Goldfarb* (2003) 108 Cal.App.4th 47, 52 [133 Cal.Rptr.2d 218], italics

added.) The rationale is that "[a]n injured person is entitled to only one satisfaction of judgment for a single harm, and full payment of a judgment by one tortfeasor discharges all others who may be liable for the same injury." (*Fletcher v. California Portland Cement Co.* (1979) 99 Cal.App.3d 97, 99 [159 Cal.Rptr. 915].) In *McCall v. Four Star Music Co.* (1996) 51 Cal.App.4th 1394, 1399 [59 Cal.Rptr.2d 829] (*McCall*), the court explained: "[W]here fewer than all of the joint tortfeasors satisfy less than the entire judgment, such satisfaction will not relieve the remaining tortfeasors of their obligation under the judgment. Stated otherwise, *'partial satisfaction has the effect of a discharge pro tanto* [for so much].' " The single satisfaction rule is equitable in nature, and its apparent purpose is to prevent unjust enrichment. (*Milicevich v. Sacramento Medical Center* (1984) 155 Cal.App.3d 997, 1002 [202 Cal.Rptr. 484].) The plaintiff is entitled only to a single recovery of full compensatory damages for a single injury. (*Ibid.*)

In the present case, the "Agreement to Pay and Covenant Not to Execute" between the Jhaveris and the Duboises provided that "nothing contained herein shall be construed as a release, waiver or forbearance" as to Teitelbaum, Cherie Teitelbaum or L.A. Coin Company. The Duboises agreed to pay, and the Jhaveris agreed to accept, $1 million in settlement "to resolve *any and all* outstanding claims and obligations." (Italics added.)

It is undisputed that the Jhaveris received only $245,000 toward the promised $1 million in settlement. Appellants contend they were entitled to a credit equal to the "face amount of the contract," i.e., $1 million, and the trial court was wrong in ruling they should be credited only with the amount of cash received. However, "[t]he intent of the parties as expressed in the release is controlling." (*McCall, supra,* 51 Cal.App.4th at p. 1400.) The parties to the agreement clearly intended that the release be effective only upon *receipt* of full payment of $1 million. The agreement expressly provided that "in the event that *all payments are fully and timely made as required* . . . , the [Jhaveris] shall provide the [Duboises] a full Acknowledgment of Satisfaction of Judgment as to the [Duboises] only." (Italics added.)

The trial court also properly allocated a portion of the settlement to Connie Dubois's potential liability. In addition to equitable remedies, the complaint in *Jhaveri II* prayed for general, special and punitive damages against all defendants, including Connie Dubois. The Jhaveris sought to recover at least $2 million, as well as both compensatory and punitive damages, from the Duboises.

Counsel for the Jhaveris informed the court at the hearing on the motion for partial satisfaction that Connie Dubois was "equally complicit" in the fraudulent transfers and was an active participant in a conspiracy to defraud

judgment creditors. Indeed, he advised that Connie Dubois was "the more valuable defendant" from the Jhaveris' perspective because the transferred assets had been placed in her name.

 Appellants assert counsel wrongly informed the court that Connie Dubois was liable under RICO, because the complaint was not in fact amended to reflect that claim until after the settlement. However, even if the existing complaint did not yet allege the Duboises were liable under RICO, they could and would have been charged under that statute but for the intervening settlement as they allegedly were participants in the conspiracy. Moreover, a suit under the UFTA is not the exclusive remedy by which fraudulent transfers may be attacked. Principles of law and equity, including estoppel, fraud, misrepresentation "or other validating or invalidating cause," are available to supplement an action under UFTA. (8 Witkin, Cal. Procedure, *supra*, Enforcement of Judgment, §§ 488, 494, pp. 528, 533; see also *Macedo v. Bosio* (2001) 86 Cal.App.4th 1044, 1051 [104 Cal.Rptr.2d 1] [UFTA is merely cumulative, not exclusive, remedy and common law remedies remain available].) Even if the original complaint in *Jhaveri II* may have contained only one cause of action under UFTA, the allegations could be construed as encompassing common law tort actions, particularly in view of the Jhaveris' claim to entitlement to compensatory and punitive damages as well as equitable UFTA remedies. (See 8 Witkin, *supra*, § 498, pp. 538–540.)

Appellants argue the trial court erred in allocating one-half the total value of the settlement to the claims against Connie Dubois in *Jhaveri II*. Appellants point to the seeming absence of evidence on this point, claiming the court was therefore obliged to allocate liability in the manner most advantageous to nonsettling parties. We disagree.

Absent a showing the court "exceeded the bounds of reason," we will uphold the court's exercise of discretion. (*Shamblin, supra*, 44 Cal.3d at pp. 478–479; see *Denham, supra*, 2 Cal.3d at p. 566.) Because all or most of all of the Duboises' assets were being held in Connie Dubois's name and it was alleged she actively sought to defraud her husband's judgment creditors, she was vulnerable to claims for compensatory and punitive damages. Given that Dubois was effectively judgment proof at the time of the settlement, Connie Dubois was the only means by which the Jhaveris could hope to recover on their judgment against Dubois. The court therefore could reasonably allocate one-half of the potential exposure to Connie Dubois, and it did not err in so doing.

## DISPOSITION

The order is affirmed. The Jhaveris are to recover costs on appeal.

Rubin, Acting P. J., and Bendix, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.