Filed 1/30/18

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION ONE

| | |
|---|---|
| JACOB TIKOSKY, | B278052 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC057468) |
| v. | |
| YORAM YEHUDA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Frank J. Johnson, Judge. Affirmed.

Law Office of Lee David Lubin, Inc. and Lee D. Lubin for Defendant and Appellant.

Law Office of Michael N. Berke and Michael N. Berke for Plaintiff and Respondent.

_____

"The plaintiff is entitled only to a single recovery of full compensatory damages for a single injury." (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 754 (*Jhaveri*).) This case presents the question whether payment in the amount of the judgment to the plaintiff by a third party for something collaterally related to the judgment constitutes satisfaction of the judgment.

Jacob Tikosky won a judgment against Yoram Yehuda in 2003. As part of his collection efforts, Tikosky sought and received a court order to sell one of Tikosky's properties. The senior lienholder's insurer, Chicago Title Insurance Company (CTIC), paid Tikosky the exact amount of his judgment lien to avoid the sale. Based on CTIC's payment to Tikosky, Yehuda filed a motion to compel acknowledgment of partial satisfaction of the judgment. After a meandering procedural journey, the trial court denied Yehuda's motion. Yehuda appealed.

Because we conclude that CTIC's payment to Tikosky was not payment on Tikosky's judgment against Yehuda, but rather was payment for Tikosky refraining from having Yehuda's property sold, we affirm the trial court's order.[1]

---

[1] On July 12, 2017, Tikosky filed a motion to augment the record. That motion is granted.

# BACKGROUND[2]

**Tikosky's Judgment**

Tikosky filed suit against Yehuda on August 30, 2001, alleging causes of action for partnership dissolution, accounting, appointment of receiver, and imposition of constructive trust. (*Tikosky I, supra*, at p. 3.) The trial court entered judgment in the amount of $223,460.47 for Tikosky on July 30, 2003. (*Id.* at p. 2.) Following an appeal, the trial court entered a revised judgment in the amount of $643,577.33 for Tikosky on October 11, 2005. (*Tikosky III, supra*, at p. 2.) That same day, the trial court entered judgment joint and severally against Yehuda's appellate surety, Nathan Ben-Shitrit, in the amount of $284,000. Tikosky and Ben-Shitrit settled Ben-Shitrit's liability for $137,500. Tikosky ultimately acknowledged partial satisfaction of his judgment against Yehuda in that amount.

**Order for Sale of Boris Drive Property**

On May 13, 2008, the trial court granted Tikosky's motion for an order permitting his judgment against Yehuda to be enforced against a property located at 17984 Boris Drive in Encino (the Boris Drive property), a residential parcel held in the name of an intervivos trust but found to be community property

---

[2] The case has been appealed several times. The first was *Tikosky v. Yehuda* (Mar. 15, 2005, B170534) [nonpub. opn.] (*Tikosky I*). The second was B187036, which was dismissed. The third was B209196, which was dismissed. The fourth was B211287, which was dismissed. The fifth was *Tikosky v. Yehuda* (Mar. 17, 2011, B223260) [nonpub. opn.] (*Tikosky II*). The sixth was *Tikosky v. Yehuda* (Dec. 23, 2015, B255834) [nonpub. opn.] (*Tikosky III*). Much of the background is taken from *Tikosky I*, *Tikosky II*, and *Tikosky III*.

of Yehuda and his wife.  The court ordered the property sold to satisfy Tikosky's judgment.  (*Tikosky III*, *supra*, at p. 2.)  *That* sale *never happened*.[3]

**Yehuda's Bankruptcy**

In February 2009, Yehuda filed a Chapter 7 bankruptcy petition.[4]  (*Tikosky III*, *supra*, at p. 3.)  On May 18, 2009, the bankruptcy court lifted the automatic stay on the parties' stipulation to allow Tikosky "to exercise any and all rights he might have to satisfy some or all of his judgment against [Yehuda] from a sale of [the Boris Drive property] . . . ."  (*Ibid.*)  On August 14, 2009, Tikosky sought and obtained an order clarifying the relief-from-stay order and, among other things, permitting Tikosky to obtain a state court order for post-judgment attorney fees and costs, to be enforced against the Boris Drive property—but not to recover from any other Yehuda bankruptcy assets without further order from the bankruptcy court.  (*Ibid.*)

On October 6, 2009, the superior court awarded Tikosky post-judgment attorney fees and costs of $212,184.40.  (*Tikosky III*, *supra*, at p. 3.)

---

[3] Yehuda eventually sold the Boris Drive property in a "short sale" transaction a year and a half after the trial court ruled on Yehuda's first motion to compel acknowledgement of partial satisfaction of the judgment and after he demanded acknowledgment in advance of the second motion.  The instant appeal is based on Yehuda's renewal of the second motion.

[4] Yehuda filed his bankruptcy petition in the Southern District of Florida.  On December 14, 2009, that court granted Tikosky's motion to transfer venue to the Central District of California.

**Boris Drive Lien Priority**

On January 28, 2010, the superior court ruled on a motion for determination of the priority of the liens on the Boris Drive property. JPMorgan Chase Bank as successor in interest to Washington Mutual Bank held the first lien in the amount of $647,149.23. Tikosky's judgment ($223,460.47) and amended judgment (which, after credit to Yehuda for his appellate surety's $137,500 payment to Tikosky, was $506,077.33) were the second and third liens. The fourth ($1,650,000) and sixth ($500,000) liens were for additional deeds of trust in favor of Washington Mutual Bank. And the fifth lien ($500,000) was a deed of trust in favor of another lender (Schaefer TD). The liens on the Boris Drive property, then, totaled $4,026,687.03.

**The Tikosky-CTIC Transaction**

The trial court set the Boris Drive foreclosure sale for March 18, 2010. But on the sale date, CTIC, as title insurer for the Washington Mutual liens (the first, fourth, and sixth liens), paid Tikosky $792,531.21 to avoid the sale.[5] (*Tikosky III*, *supra*, at p. 4.) Based on that payment, Yehuda demanded that Tikosky acknowledge partial satisfaction of the judgment.

**The Bankruptcy Court Rulings**

In a March 2011 ruling on Yehuda's motion for summary judgment on Tikosky's adversary claim, the bankruptcy court

---

[5] Yehuda succinctly characterized CTIC's interest in preventing the foreclosure sale: "[Tikosky] refused to foreclose on the Boris Property, since to do so would have caused CTIC to have to pay on the claim of its insured, WAMU. . . . [¶] . . . [¶] CTIC paid [Tikosky] the amount of the judgment lien in order to avoid having to pay . . . more than $2,150,000 to its insured, which it would otherwise be contractually obligated to do."

wrote that Tikosky "does not dispute that he has been paid by [CTIC] with respect to his claim, but does dispute the nature and extent of that payment. [Tikosky] argues that the purported payment from [CTIC] satisfied only [Tikosky's] 'in rem claim.' [Tikosky] is still seeking post-judgment costs of $212,184.40 plus interest, which [Tikosky] contends was not within the scope of the transaction with [CTIC]." The bankruptcy court concluded that Tikosky "has no standing to prosecute his claim for $792,531.21 arising out of the judgment because it was assigned to [CTIC]. [Tikosky's] claim for $212,184.40 plus interest remains, or at least, debtor has not shown that there is no material dispute of fact as to this amount. The [relief-from-stay] order made no ruling as to whether this claim was valid. It simply allowed an in rem execution of the claim and the liquidation of [t]he claim. The claim was liquidated, and the undisputed material facts show that only the judgment abstract portion was sold. Whether the remaining portion of the judgment was extinguished is still in dispute. Because there is a genuine issue of material fact as to whether [Tikosky] remains a valid creditor of [Yehuda] with standing to prosecute the adversary proceeding[, Yehuda] has not satisfied his burden of demonstrating that [Tikosky's] purported assignment to [CTIC] satisfied all claims [Tikosky] has against the estate." The bankruptcy court continued, explaining, "[a]s the parties claim there is no other documentation assigning the judgment to [CTIC] other than what is in the record, it is not possible on the basis of this motion to determine the scope of the assignment and whether or not [Tikosky] continues to have standing in this case."

Yehuda later filed a motion to disallow the claim, and on August 16, 2012, the bankruptcy court issued another order

6

opining on the effect of the Tikosky-CTIC transaction. "On March 18, 2010," the bankruptcy court recalled, "[CTIC] purchased Tikosky's rights in the Judgment Lien for $792,531.21 ('Purchase Agreement'). [CTIC] and Tikosky assert that they entered into the Purchase Agreement to stop a pending foreclosure on the Boris Drive Property, thereby ensuring that Tikosky's Judgment Lien would be preserved." On this motion, however, the bankruptcy court determined that there was "no factual basis by which to disallow Tikosky's claim. Contrary to [Yehuda's] assertions, the assignment of the Judgment Lien to [CTIC] did not erase Tikosky's right to pursue his claim against [Yehuda] because the Judgment has not been fully satisfied . . . ." "Tikosky and [CTIC]," the bankruptcy court explained, "can decide how to split the proceeds of the Judgment Lien after collection."

**Post-Bankruptcy Proceedings**

On November 6, 2013, after the bankruptcy was dismissed (without discharge), Yehuda demanded that Tikosky acknowledge partial satisfaction of the judgment "in the amount of $792,531.21, as of March 18, 2010." Yehuda explained that the demand was "based upon Mr. Tikosky's receipt of payment of $792,531.21 from [CTIC] on March 18, 2010 (which satisfied a portion of the judgment in said amount) . . . ." Tikosky declined.

The Boris Drive property was sold in November 2013, after which Tikosky acknowledged partial satisfaction of the Yehuda judgment in the amount of $33,750. (*Tikosky III*, *supra*, at p. 7, fn. 13.)

In December 2013, Yehuda moved the superior court for an order to compel acknowledgement of partial satisfaction of the judgment in the amount of $792,531.21. The trial court denied

Yehuda's motion on February 24, 2014, agreeing with Tikosky's argument that the bankruptcy court's August 16, 2012 order denying Yehuda's motion to disallow Tikosky's claim was res judicata of the partial-satisfaction issue. (*Tikosky III*, *supra*, at p. 7.)

Yehuda appealed. And on December 23, 2015, we issued an opinion disagreeing with the trial court's conclusion, reversing the trial court's order, and remanding the case to the trial court. (*Tikosky III*, *supra*, at pp. 16-17.)

In July 2016, Yehuda filed a renewed motion to compel acknowledgement of partial satisfaction of the judgment. On August 24, 2016, the trial court again denied Yehuda's motion. The trial court found "no evidence of any intention to benefit [Yehuda]" in the transaction between Tikosky and CTIC. And the trial court found "no circumstances under which the defendant can assert any relationship to the contract between [CTIC] and [Tikosky]."

Yehuda timely appealed.

## DISCUSSION

Yehuda contends CTIC's March 18, 2010 payment to Tikosky entitles him to acknowledgment of partial satisfaction of Tikosky's judgment in the amount of $792,531.21 or alternatively that Tikosky's release of his judgment lien on the Boris Drive property, which permitted the short sale of the property, required Tikosky to credit Yehuda for the March 18, 2010 payment.

Yehuda relies most heavily on a single sentence in *Jhaveri*, *supra*, 176 Cal.App.4th 740: "The plaintiff is entitled only to a single recovery of full compensatory damages for a single injury." (*Id.* at p. 754.) Tikosky, on the other hand, relies on *Buckeye Refining Co. v. Kelly* (1912) 163 Cal. 8, 13 to characterize the

8

March 18, 2010 payment as CTIC purchasing an equitable interest in Tikosky's judgment against Yehuda.

The facts underlying the parties' disagreement are undisputed; the parties dispute only the legal effect of CTIC's March 18, 2010 payment to Tikosky.  We review legal questions based on undisputed facts de novo.[6]  (*Behunin v. Superior Court* (2017) 9 Cal.App.5th 833, 843.)

Yehuda's contentions focus entirely on Tikosky receiving a payment in the amount of the lien he held on Yehuda's Boris Drive property.  Satisfaction of a judgment, however, is not a one-sided consideration; satisfaction of judgment is not only about *receipt* of payment, but is also about *payment*.  Yehuda's out-of-context admonition from *Jhaveri* that a "plaintiff is entitled only to a single recovery of full compensatory damages for a single injury" is accurate as far as it goes.  (*Jhaveri*, *supra*, 176 Cal.App.4th at p. 754.)  But it does not extend to the question here.[7]

---

[6] "A trial court's decision to apply a credit in partial satisfaction of the judgment is an exercise of the court's equitable discretion." (*Jhaveri*, *supra*, 176 Cal.App.4th at p. 749.)  We would, therefore, ordinarily review this type of motion for an abuse of discretion.  The question here, however, is more basic; the question here is whether the CTIC payment to Tikosky constitutes a credit in the first instance, and not whether the trial court abused its discretion in declining to apply a credit.

[7] Yehuda expends considerable energy arguing that Tikosky secured his non-opposition to Tikosky's relief-from-stay motion in Yehuda's Florida bankruptcy by agreeing he would accept whatever proceeds the sale of the Boris Drive property generated in full satisfaction of his judgment.  Tikosky, however, held a second lien on a property encumbered by millions of

CTIC's March 18, 2010 payment to Tikosky was neither intended to be nor did it serve as compensation for the injury Yehuda inflicted upon Tikosky.[8]  The payment, rather, was

dollars in other liens and a judgment that continued to increase as Yehuda continued to obstruct collection efforts.

While Yehuda's non-opposition to a motion may have presented some value to Yehuda, it is implausible that the value was the full amount of a judgment Tikosky secured by taking Yehuda to trial in 2003.  We have no way to know whether the bankruptcy court would have granted Tikosky's relief-from-stay motion absent Yehuda's non-opposition or would have required Tikosky to wait until either discharge or, as it happened, denial of discharge, to seek relief from the superior court to sell the Boris Drive property.

Whatever Yehuda and Tikosky agreed to, we can find nothing in the record that suggests they agreed that *not* selling the property—the situation *here*—would result in some sort of credit to Yehuda on Tikosky's judgment.

[8] The record apparently does not disclose the terms of CTIC's agreement with Tikosky.  Correspondence from Yehuda's attorney to Tikosky characterizes the transaction as an assignment of the judgment liens to CTIC.  An "Agreement to Purchase Equitable Interest in Judgment" that purports to have been entered into on March 18, 2010 between Tikosky and CTIC, however, characterizes CTIC's agreement with Tikosky as a purchase of an equitable interest in the judgment and appoints Tikosky as CTIC's agent "for the limited purposes of Tikosky's continued pursuit, as legal owner, of collection of the entire amount on the Amended Judgment" and notes that Tikosky "retains legal title to the entire Amended Judgment with the right to pursue collection of the entire Amended Judgment subject to the equitable interest of CTIC."  Yehuda contends the

10

consideration for Tikosky declining to exercise a legal right he had separate from (although existing as a function of) his judgment against Yehuda. CTIC entered into an agreement with Tikosky *to protect itself* and its insured by securing Tikosky's agreement to *not* foreclose on the Boris Drive property. That agreement, its value to either Tikosky or CTIC, and the rights and remedies of each party thereunder, are questions left to Tikosky and CTIC to work out as they will. And those two parties could have placed whatever market price on that agreement they wished. To credit *Yehuda* for that payment would allow *Yehuda* to take $792,531.21 out of CTIC's pocket and allow Yehuda to give *nothing in return*.

Yehuda emphasizes a single sentence in *Jhaveri*, but the preceding sentences he omits focus on *who satisfies the judgment*: "It is the rule that '*if one joint tortfeasor satisfies a judgment* against all joint tortfeasors the judgment creditor cannot obtain a double recovery by collecting the same judgment *from another of the tortfeasors.* [Citation.] The rationale is that '[a]n injured person is entitled to only one satisfaction of judgment for a single harm, and full payment of a judgment *by one tortfeasor* discharges all others who may be liable for the same injury. [Citation.] In *McCall v. Four Star Music Co.* (1996) 51 Cal.App.4th 1394, 1399, . . . the court explained: '[W]*here fewer than all of the joint tortfeasors satisfy less than the entire judgment*, such satisfaction will not relieve the remaining tortfeasors of their obligation under the judgment.' " (*Jhaveri, supra*, 176 Cal.App.4th at pp. 753-754, italics added.)

---

Tikosky-CTIC agreement was not entered into until March 27, 2012 and is a sham.

11

Neither does it appear that the Boris Drive property "short sale" triggered any obligation for Tikosky to acknowledge any satisfaction of the judgment beyond the $33,750 the record discloses he acknowledged. Although the record is silent on this point, the proceeds from that sale were presumably applied to the liens on the property in order of their priority.

That the property eventually sold is of no consequence. Yehuda based his motion on the March 18, 2010 payment. And he initially filed the motion and had it heard more than a year and a half before the short sale. Though we have no record of what happened to the proceeds from the short sale, we will not presume *in the absence of that record* they were turned over either to CTIC or to Tikosky, particularly since there was a lien on the Boris Drive property that was senior to Tikosky's.

The question here is elementary: is a judgment debtor entitled to the benefit of an agreement between two other parties that is entered into neither for the benefit of nor at the expense of the judgment debtor. As did the trial court, we conclude the answer must be no.

At the hearing on Yehuda's renewed motion to compel acknowledgment of partial satisfaction of the judgment, the trial court observed: "The point is made by [Yehuda] that he should not be obligated to pay twice, to pay this judgment twice, which, as a legal proposition, is probably correct – most certainly correct. But as pointed out by the opposing party, *he hasn't even paid once. He's paid nothing on this judgment*, and the payment by [CTIC] was not intended to confer a benefit upon him. [¶] If at some point[] the judgment is satisfied *by* [*Yehuda*], it's theoretically possible that [CTIC] and [Tikosky] might have some sort of dispute that would have to be resolved and resort to the

12

court processes. But I don't see any circumstance at all in which [Yehuda], the moving party herein, has any standing to assert the nature of that contract between" CTIC and Tikosky.[9]

We agree. It would be a great injustice for Yehuda to pay Tikosky's judgment twice. But that has not happened here.

---

[9] The record here is effectively silent on the intent of the Tikosky-CTIC transaction because Yehuda disputes every characterization contained in the record of that transaction and opts to characterize it instead as a payment by CTIC for Yehuda's benefit. There is no basis in the record upon which we might draw that conclusion. Nor do we find it necessary for our consideration. Had Yehuda produced a record supporting his characterization of the Tikosky-CTIC transaction—a transaction to which he was not a party—our analysis might be different. (*McCall v. Four Star Music Co.*, *supra*, 51 Cal.App.4th at p. 1401 ["The intent of the parties as expressed in the release is controlling"].)

## DISPOSITION

The trial court's order denying Yehuda's motion to compel acknowledgment of partial satisfaction of Tikosky's judgment is affirmed.  Tikosky is to recover his costs on appeal.

## CERTIFIED FOR PUBLICATION


CHANEY, Acting P. J.

We concur:


JOHNSON, J.


BENDIX, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14