Filed 7/2/15  Lalanne v. Armanio CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>

ROBERT LALANNE,

     Plaintiff and Respondent,

v.

MICHELE ARMANINO et al.,

     Defendants and Appellants;

CHRISTOPHER ANDREAS,

     Third Party Claimant and
Respondent.

</td><td>

A140972

(San Francisco City and County
Super. Ct. No. CPF-13-513216)

</td></tr>
</table>

In ongoing and multiphased litigation, Robert Lalanne obtained an arbitration award against his sister, Michele Armanino, in her personal capacity and in her capacity as the managing member of a limited liability corporation.  Armanino claimed an offset against the arbitration award and paid Lalanne the remainder.  Lalanne then obtained a judgment confirming the arbitration award, and Armanino moved to compel acknowledgement of satisfaction of judgment.  The trial court denied the motion. Lalanne's attorney, who had been assigned an interest in the judgment, obtained a writ of execution and Armanino moved to recall and quash the writ.  The court denied this motion as well.  We affirm the rulings on both motions.  We also attempt to provide guidance should the motions be renewed following this appeal.

1

# I. BACKGROUND

Lalanne's and Armanino's parents formed several estate planning entities in which Lalanne, Armanino and other immediate family members hold financial interests. The entities include Lalanne LLC (LLC), a real property investment venture; the Lalanne 1997 Trust; and the Lalanne Ranch Partnership. At some point, Lalanne became the managing member of LLC, trustee of the trust, and managing general partner of the partnership. In 2006 or early 2007, Armanino took over these positions.

A. *2007–2008 Settlements of Disputes Between Lalanne and Armanino*

Several disputes between Lalanne and Armanino (in her individual capacity and in her management capacities of the various estate planning entities) were submitted to mediation before the Honorable Ellen S. James (retired) under the auspices of JAMS, an alternative dispute resolution firm (formerly Judicial Arbitration and Mediation Services). In 2007, Lalanne and Armanino arrived at a partial settlement, which was memorialized in a signed agreement. This settlement required LLC and the Lalanne 1997 Trust to make certain immediate distributions to Lalanne; Lalanne and his wife to vacate a home that belonged to the trust; Armanino to sell the home; and LLC and the trust to then make certain distributions from the sale proceeds. In 2008, Lalanne and Armanino resolved their remaining disputes and signed a second settlement agreement (2008 Settlement). The 2008 Settlement provided in part:

"[3]b. As LLC Manager, [Armanino] shall, by Monday, June 16, 2008, distribute $339,000 to the members in accordance with their interests. . . . In addition, [Armanino] shall . . . advance $125,000 to [Lalanne], which advance shall be credited against future distributions from the LLC, and shall accrue simple interest at 6% per annum. Notwithstanding anything to the contrary in the LLC agreement, in the future, after the reserve is replenished to $625,000, all net income of the LLC, except amounts necessary to maintain a reserve of $625,000 or such other amount as the Parties may agree or Judge James may determine is appropriate under the circumstances then prevailing, shall be distributed to the members, in accordance with their interests, on at least a quarterly basis.

"[3]c.  The Parties agree the [Lalanne Ranch] Partnership should sell the ranch as soon as reasonably practicable. . . .

"[3]e. [*sic*] [Lalanne] agrees that the following amounts shall be considered advances to him, which advances shall be deducted from his distribution(s) of the proceeds from the sale of the ranch:  $12,000 for the ranch truck, which shall be credited to the Entity that paid for the truck; $116,694.91 for the items reflected in Exhibit B, which advances shall be credited to the 1997 Trusts [*sic*]; $12,633.19 for accounting fees and a pet hospital bill, which shall be credited to the LLC; and $200,000, for all other potential claims, which shall be credited to the 1997 Trust."

The 2008 Settlement provided that "[a]ny and all disputes concerning this Agreement . . . shall be mediated and, if unresolved, arbitrated at JAMS," before Judge James if available.

B.    *Arbitration of Dispute over Section 3(b) of the 2008 Settlement*

Lalanne claimed that LLC breached section 3(b) of the 2008 Settlement (Section 3(b)), and the matter went to arbitration before Judge James in 2012.[1]  LLC had made the $339,000 distribution and $125,000 advance required by Section 3(b) but no other distributions.  The parties disagreed about the meaning of "reserve" and "net income" in Section 3(b) and thus disagreed about whether further distributions were required.  In an interim award, Judge James agreed with Lalanne's interpretation of those terms and ordered the parties to submit supplemental briefing on Lalanne's "proportionate amount of the distributions that should have been made."  In a second interim award, Judge James determined the amount of Lalanne's interest in LLC, permitted a temporary increase in reserves, and ordered LLC to make a distribution to Lalanne based on those facts but allowing it to offset the $125,000 advance that had been made to Lalanne.  In a third interim award, James awarded Lalanne $155,000 in attorney fees and costs as the prevailing party (fee award).

---

[1] Armanino and LLC were identified as the responding parties to this arbitration proceeding.  For purposes of simplicity, we refer to both as LLC except where necessary to refer to Armanino separately.

3

In communications about the the final award's specific wording, the parties disagreed about whether LLC should be permitted to offset alleged debts owed by Lalanne from future distributions and the fee award, including the debts listed in section 3(e) of the 2008 Settlement (Section 3(e)). LLC reported that Lalanne had sold his interest in the ranch property in 2011, and argued that Lalanne's debts listed in Section 3(e) were therefore "payable *now* because [Lalanne] has . . . received all the proceeds that he will ever receive from the sale" of the ranch property. It argued that "the final award should not pre-judge issues relating to [Lalanne's] Section 3(e) obligations (which are not encompassed in this proceeding), and should not prejudice [LLC's] ability to enforce those obligations." (Some capitalization omitted.) It further argued that Lalanne had "long been aware that [LLC] considered [the Section 3(e)] obligations triggered and intended to offset the amounts due under Section 3(e) against any distributions payable to [LLC]. . . . Lalanne had the opportunity to[,] but chose not to[,] include that dispute in this proceeding." Lalanne argued that Section 3(e) had not been triggered; that it was incumbent on *LLC*, not him, to raise Section 3(e) in the arbitration if it wanted to offset those debts from the payments ordered by Judge James; and that the offsets should not be permitted.

In her final award, Judge James expressly declined to make any ruling regarding Section 3(e) obligations: "All issues regarding the sale of the ranch and resulting obligations and appropriate set-offs are the subject of another pending arbitration. In the list of [Lalanne's] Statement of Claims for this arbitration, the dispute regarding whether [his] sale of an interest in the ranch property triggered his repayment obligations under [Section] 3(e) of the [2008 Settlement] was not included. [Citation.] [LLC] did not include [Section] 3(e) issues in its presentation at trial at the Arbitration Hearing either. [¶] [LLC] is ordered to make the awarded distributions from the money in the LLC accounts. The reserve amount is to be subtracted from [the amount deposited in specified accounts]. The $125,000 that [Lalanne] owes the LLC shall be subtracted from the remaining proportionate balance due to him. This distribution shall be made within seven days of this Final Award." Thus, the final award did not specify a dollar amount of the

4

distribution, but only specified the manner in which the distribution should be calculated. The court slightly increased the fee award to $156,600.

On April 13, 2013, shortly after the final award was issued, Armanino informed Lalanne and other family members that she planned to make distributions from LLC and the Lalanne 1997 Trust (as well as another trust) and detailed for each family member the planned distributions, deductions, and net payments. For Lalanne, the calculation was the following:

| | |
|---|---|
| LLC Distribution | $263,743.59 |
| 1997 Trust Distribution | $253,714.08 |
| Douglas Trust Distribution | $ 18,248.96 |
| Fee Award | $156,600.00 |
| | $692,306.64[2] |
| Debt to LLC | ($137,633.19) |
| Debt to Trust | ($316,694.91) |
| Debt to Ranch | ($ 12,000.00) |
| LLC Capital (Deficit) | ($172,746.00) |
| | ($639,074.10) |
| Net Distribution | $ 53,232.54 |

In other words, Armanino deducted what she alleged to be due from Lalanne under Section 3(e) of the 2008 Settlement (as well as other sums). Lalanne's "net distribution" was paid to Center Street Development Company, which held a lien against Lalanne's recovery in the arbitration.[3]

After Lalanne objected to the distribution deductions, Judge James convened a hearing on April 16, 2013, to resolve the dispute. She heard argument and ruled, "[T]here were never any circumstances in this arbitration where I considered anything

---

[2] This is the total reported by Armanino in her April 13, 2013 correspondence.

[3] In 2012, Lalanne stipulated to entry of judgment for $338,795.17 in favor of Center Street Development Company based on his failure to repay certain loans. The company then filed a notice of judgment lien.

other than [Section] 3(b). So whether the [Section] 3(e) deductions are appropriate was well beyond the scope of this arbitration and I didn't rule on it, and I am not going to be able to rule on the entitlement or lack of entitlement to the [Section] 3(e) offsets. [¶] . . . [¶] . . . I never get involved in enforcement of my judgment." Judge James issued a corrected final award (the James Award) with immaterial changes and left the remedial language of the award unchanged.

C.     *Petition to Confirm the James Award*

In September 2013, Lalanne petitioned the San Francisco Superior Court to confirm the James Award and to "enjoin [LLC], until such time as [a writ of execution] can be filed and served, from engaging in any further unlawful 'distributions' or fraudulent transfers of [Lalanne's] rightful share of the joint funds held in [LLC] accounts." He asked the court to enter two separate judgments, one ordering a $459,057.61 distribution to Lalanne by September 30, plus interest, and another ordering immediate payment of the $156,600 fee award, plus interest.

On October 7, 2013, the court (Hon. Peter J. Busch) confirmed the James Award "in all respects as made" and entered judgment "in conformity []with" the award (the James Judgment). The court expressly denied Lalanne's "request to enter two judgments that alter the award; nor will the Court address other issues concerning the enforcement or interpretation of the award." Lalanne assigned the James Judgment to his counsel, Christopher Andreas.

D.     *Arbitration of Lalanne Ranch Partnership Dispute*

On October 15, 2013, the Honorable Richard A. Hodge (retired) issued a final award in an arbitration between the Lalanne Ranch Partnership and Lalanne (the Hodge Award) conducted under the auspices of the American Arbitration Association. Although this apparently was the "pending arbitration" referenced in the James Award, the James Award mistakenly noted that this arbitration encompassed "[a]ll issues regarding the sale of the ranch and resulting obligations and appropriate set-offs."

According to the Hodge Award, the Lalanne Ranch Partnership alleged that Lalanne breached his fiduciary duties as a partner when he sold his interest in ranch

6

property that was owned by the partnership. Judge Hodge agreed, finding Lalanne violated a partnership restriction on sales of ranch property by (1) encumbering his interest with a deed of trust, and (2) selling his interest to Center Street Development Company. Judge Hodge awarded the partnership $1.1 million in damages as well as attorney fees and costs. He rejected Lalanne's "request that the [Hodge] Award provide instruction as to how [Armanino] should 'appropriately credit the partners' capital accounts' . . . primarily because a resolution of that and similar financial issues would require extended inquiry beyond the appropriate confines of this arbitration. Intra-Partnership accounting issues are not within the scope of this arbitration, nor does the record provide an adequate basis for the adjudication of such issues." The Hodge Award does not expressly address Section 3(e) of the 2008 Settlement.

On December 23, 2013, the San Francisco Superior Court (Judge Marla Miller) confirmed the Hodge Award and entered a $1,556,332 judgment against Lalanne and in favor of the Lalanne Ranch Partnership (the Hodge Judgment). The partnership assigned the Hodge Judgment to LLC.

E.     *Motion to Compel Acknowledgement of Satisfaction of Judgment*

On September 16, 2013, Armanino made a distribution of LLC and Lalanne 1997 Trust assets. Lalanne's distribution was calculated as follows:

| | |
|---|---|
| LLC Distribution | $41,457.51 |
| 1997 Trust Distribution | 28,259.65 |
| Total Distribution | $69,717.16[4] |

On October 8, 2013, the day after the trial court confirmed the James Award, LLC served Andreas with a demand for acknowledgement of satisfaction of the James Judgment. Andreas objected, and LLC filed a motion to compel acknowledgement of satisfaction of the James Judgment (motion to compel). LLC argued, "By making the

---

[4] Center Street Development Company argued it should receive the distribution pursuant to its judgment lien, but Andreas argued that such a payment would amount to a fraudulent transfer of LLC funds. Armanino filed an interpleader action in Contra Costa County Superior Court to resolve the conflicting claims on the funds.

April 13 distribution and a second distribution on September 16, 2013, [LLC has] satisfied [its] obligations under the [James] Judgment." The hearing on the motion to compel was continued to January 2014.

While the motion to compel was still being briefed, Andreas obtained a writ of execution on "the only stated number in the [James Judgment]," the $156,600 fee award.[5] LLC filed an ex parte application to stay enforcement of the writ pending a ruling on the motion to compel. Judge Miller granted the application on December 24, 2013. However, LLC apparently failed to serve a certified copy of the stay order on the sheriff. On December 31, 2013, LLC received notices that the bank holding LLC's accounts had been served a notice of levy and planned to remit $156,676 from those accounts to the sheriff. LLC brought the December 24, 2013 stay order to the bank's attention and, on January 3, 2014, also obtained from the court a supplemental stay order that expressly applied to the bank. No further action was taken on the writ until at least April 8, 2014.

The day after hearing on January 28, 2014, the court (Hon. Ernest H. Goldsmith) denied the motion to compel (January 29 Order). The order stated that the motion was "predicated on the assumption that th[e] [April 2013] $53,232.54 distribution constitutes compliance with the arbitrator's award . . . . [Lalanne], on the other hand, contends that the offsets were improper. [Judge James] clearly stated that . . . deductions pursuant to [Section] 3(e) of the parties' settlement were not before her. . . . The Court believes that it is premature to determine whether [LLC] distributed the proper amount and satisfied the judgment. The Court finds that that determination should occur after the parties resolve their dispute regarding [Section] 3(e)." The court denied the motion without prejudice, subject to renewal "once the offset dispute is adjudicated." LLC appealed from the January 29 Order on February 3, 2014.

F.     *Motion to Recall and Quash Writ of Execution*

On February 4, 2014, Andreas filed an ex parte application to lift the stay of enforcement of the writ of execution, but his application was denied. On February 28,

_____

[5] A replacement writ was issued on December 5, 2013, to correct a technical error.

8

LLC filed a motion to recall and quash the writ of execution (motion to recall). The first ground for the motion was that LLC's appeal of the January 29 Order automatically stayed enforcement of the James Judgment. A second ground was that the James Judgment was unenforceable because the court ruled in the January 29 Order that it could not determine whether any payments were due under that judgment. A third ground was that LLC was entitled to offset the $1.5 million Hodge Judgment against the James Judgment. In opposition, Andreas argued that any stay triggered by the appeal rendered recall and quashing of the writ unnecessary; in fact, preserving the status quo (the point of an automatic stay pending appeal) required continued pendency of the writ. He conceded that enforcement of the writ was stayed until the appeal was resolved. Andreas also argued that the Section 3(e) debts were not appropriate offsets for reasons already stated, and that the Hodge Judgment was not an appropriate equitable setoff because it was entered after the James Judgment "in favor of the [Lalanne Ranch Partnership] by another arbitration tribunal in an unrelated action based on a different contract."

In a tentative decision, the court (Judge Goldsmith) wrote that it intended to grant the motion to recall: "First, while it is not entirely clear, the Court tends to believe that [LLC] may have satisfied the judgment. The [James Judgment] order[ed] [LLC] to make a distribution and [LLC] made the distribution. The [James Judgment] does not award a certain sum of damages. [Judge James] addressed the offset issue and refused to alter the award . . . . Second, in light of the uncertainty regarding satisfaction of the judgment, it is improper to allow the writ of execution to remain in place. Third, an appeal generally extinguishes the lien that a writ of execution creates." (Citing *Adir Internat., LLC v. Superior Court* (2013) 216 Cal.App.4th 996, 1001 (*Adir*).)

At the hearing on the motion to recall, however, the court questioned whether it was necessary to recall and quash the writ of execution because a stay pending an appeal might be automatically effected by operation of law. LLC reported that the funds had already been taken from its bank accounts and were being held by the sheriff. LLC argued that, under *Adir, supra,* 216 Cal.App.4th 996, it would have no remedy if the sheriff disbursed the funds despite the automatic stay; rather, the only way it could

9

protect itself was by way of its motion to recall. Andreas disagreed. After issuance of the supplemental stay order, he reported, no further action had been taken on the writ and the court had denied Andreas's February 4, 2014 ex parte application to lift the stay. If the sheriff nevertheless disbursed the funds, LLC would have a remedy against the sheriff. The court commented: "If this is lifted, then what's going to happen? We're just going to have more litigation about what happens to that money. I don't know who's entitled to it. And I'm not going to make those judgments now. . . . [¶] . . . [¶] . . . [T]he status quo is well preserved." The court denied the motion to recall and a summary order was filed on May 7, 2014. LLC's appeal from this order was filed under the same number as its appeal from the January 29 Order (appeal No. A140972).

## II. DISCUSSION

### A. *Motion to Compel*

LLC argues the trial court erred in denying its motion to compel. We affirm the order.

"A motion to compel acknowledgment of satisfaction or partial satisfaction of a judgment ([Code Civ. Proc.,] §§ 724.050, subd. (d), 724.110, subd. (b)) is an entirely acceptable procedure for seeking an offset against a judgment."[6] (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 753.) "[A] court of equity will compel a set-off when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered. The insolvency of the party against whom the relief is sought affords sufficient ground for invoking this equitable principle. [Citations.] . . . The fact that the demand of the plaintiff has not been reduced to judgment is no obstacle to its allowance as set-off against a judgment." (*Harrison v. Adams* (1942) 20 Cal.2d 646, 648–649; see also *Erlich v. Superior Court* (1965) 63 Cal.2d 551, 555.)

"A trial court's decision to apply a credit in partial satisfaction of the judgment is an exercise of the court's equitable discretion. [Citation.] An abuse of discretion occurs when, in light of applicable law and considering all relevant circumstances, the court's

---

[6] Undesignated statutory references are to the Code of Civil Procedure.

10

ruling exceeds the bounds of reason." (*Jhaveri v. Teitelbaum, supra,* 176 Cal.App.4th at p. 749.) If the court makes factual findings in support of its order, we review the findings for substantial evidence. (*Id.* at p. 748.)

### 1. *Distribution Requirement*

LLC first argues that simply by making the April 13, 2013 distribution, it satisfied the James Award's distribution requirement, which LLC describes as a requirement "to make a 'distribution' of an unspecified amount within seven days." The description is inaccurate. Although Judge James did not specify a dollar amount of the distribution, she specified how the distribution should be calculated: "The reserve amount is to be subtracted from [the amount in specified accounts]. The $125,000 that [Lalanne] owes LLC shall be subtracted from the remaining proportionate balance due to him." Thus, before the trial court could compel acknowledgement of satisfaction of the distribution aspect of the James Judgment, it had to and was able to determine whether the *amount* of the distribution satisfied the James Award's requirements.[7]

### 2. *Mutuality*

Lalanne correctly argues that the only possible offsets to the James Judgment are claims for which Lalanne is liable *to LLC*. To establish an equitable offset, "mutuality is essential." (*Harrison v. Adams, supra,* 20 Cal.2d at p. 649.) The only claimed offsets in the April 13, 2013 distribution that satisfied this mutuality requirement were the alleged "Debt to LLC" and possibly the "LLC Capital [Deficit]." The sum of both of these offsets ($137,633.19 + $172,746.00 = $310,379.19) plus the amount paid to Lalanne (i.e., actually paid to Center Street Development Company as creditor of Lalanne) in April 2013 ($53,232.54 + $310,379.19 = $363,611.73) was insufficient to fully satisfy the amounts due under the James Judgment (the $263,743.58 April 2013 LLC distribution + $156,600 fee award = $420,343.58), assuming LLC's calculation of the

---

[7] On a related issue, LLC unpersuasively argued below that its payment of the September 2013 distribution was some evidence that it satisfied the James Judgment. The James Award required LLC to make a distribution within seven days of the April 8, 2013 award according to the above-quoted formula. LLC's payment of an additional distribution in September could not have satisfied that obligation.

underlying distribution was correct. Therefore, the trial court properly denied LLC's motion to compel acknowledgement of *full* satisfaction of judgment.

3. *Validity of Claimed Offsets*

For guidance to the trial court in the event LLC's motions are renewed following this appeal, we consider whether any of the amounts claimed by LLC under the 2008 Settlement could properly be taken as equitable offsets, thus potentially entitling LLC to acknowledgement of *partial* satisfaction of judgment. (See § 724.110; *Jhaveri v. Teitelbaum, supra,* 176 Cal.App.4th at p. 752.)

LLC's primary argument in the trial court and on appeal is that the motion to compel should have been granted because Judge James *declined* to determine whether the Section 3(e) debts could be offset against the April 2013 distribution. But this theory attempts to reallocate LLC's burden, as the moving party, to prove the claim or defense underlying the motion. (See Evid. Code, § 500.) Moreover, a court may grant a motion to compel acknowledgement of satisfaction of judgment only if it finds the judgment has been satisfied *in fact*. (See *George S. Nolte Consulting Civil Engineers, Inc. v. Magliocco* (1979) 93 Cal.App.3d 190, 193 [discussing former § 675, subd. (a), predecessor statute to § 724.010, subd. (a)]; *Hrimnak v. Watkins* (1995) 38 Cal.App.4th 964, 986 (conc. opn. of Davis, J.).) Here, LLC had to prove payment of a distribution calculated under the James Award's terms (which LLC itself calculated as $263,743.58) plus the $156,600 fee award even though it only disbursed only $53,232.54. In order to satisfy this burden, it had to prove the validity of the claimed offsets. The fact that entitlement to the offsets had *not* yet been resolved thus could have been a reason to *deny* the motion, but not to grant it.

Should the motion to compel be brought again after resolution of this appeal, the trial court would have the option to take evidence and determine the validity of the claimed offsets. Courts generally have jurisdiction to decide offset-related issues when they are raised in a motion to compel even if the issues were not decided by the court or arbitrator who issued the underlying judgment. (See, e.g., *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 750 [validity of claim underlying offset request and equitable

12

defenses to claim]; *Cunningham v. Magidow* (2013) 219 Cal.App.4th 298, 304–306 [judgment debtor's entitlement to offset the claim]; *Brienza v. Tepper* (1995) 35 Cal.App.4th 1839, 1847–1850 [priority of competing offset claims].)

The court would also have discretion *not* to decide such issues in the context of a motion to compel if it determines that it would be inequitable to do so, and that the issue would be better decided in a different forum. (See *Schumacher v. Ayerve* (1992) 9 Cal.App.4th 1860, 1865 [motion to compel acknowledgement of satisfaction of judgment properly denied where trial court could not determine whether judgment was satisfied under ambiguous arbitration award terms]; *Pierson v. Honda* (1987) 194 Cal.App.3d 1411, 1414 [same].) Here, for example, in order to determine whether LLC satisfied the judgment, the trial court would have to interpret the 2008 Settlement and decide whether Section 3(e) had been triggered and Section 3(e) debts were therefore properly offset from the distribution required by the James Award. The 2008 Settlement, however, requires that such interpretation issues be submitted to arbitration. The trial court therefore might reasonably deny the motion to compel because issues necessary to decide whether the James Judgment were satisfied need to be resolved in another forum.

These matters must be addressed to the trial court's discretion in the first instance.

B.  *Motion to Recall*

LLC argues the trial court erred in denying its motion to recall. We agree in part but conclude the error was not prejudicial.

A trial court has inherent equitable power to recall and quash a writ of execution that was improperly or inadvertently issued. (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2014) ¶ 6:612, p. 6D-70 (rev. #1, 2014) (Ahart).) However, this is not the only available procedure for suspending action on a writ of execution. The trial court may also order a stay of execution. (*Id.* at ¶ 6:611 at pp. 6D-69 to 6D-70 (rev. #1, 2014).) The court has "broad discretion in determining whether to . . . enjoin collection of [a] judgment" pending decision of the validity of a disputed claim for offset. (*Erlich v. Superior Court, supra,* 63 Cal.2d at p. 556.)

LLC based its motion to recall on three grounds.

13

First, LLC argues that the writ should be recalled because LLC had valid offsets to the $156,600 fee award on which the writ was based. A claim of offset may be a proper ground for bringing a motion to recall. (Ahart, *supra,* ¶ 6:613 at p. 6D-70 (rev. #1, 2014).) However, we have already concluded that LLC has not yet established its right to the claimed offsets. Thus, on the existing record, the trial court did not err in denying the motion on this ground.

LLC next argues that denial of its motion to recall was inconsistent with the court's statement that it was "premature" to determine whether the judgment has been satisfied. In making this statement, the court suggested that the issue of LLC's entitlement to the Section 3(e) setoffs should be resolved in another forum. LLC argues that accordingly the James Judgment is unenforceable until the Section 3(e) issue is resolved in some other forum and thus the writ of execution should be recalled and quashed (and should never have been issued in the first place). Under this approach, however, the judgment *creditor* would bear the burden of proving the *invalidity* of the judgment debtor's claimed offsets. Similar to LLC's argument with respect to the motion to compel, LLC again seeks to reallocate the burden of proof. Lalanne, as judgment creditor, took appropriate action to obtain a judgment against LLC. Andreas, as judgment creditor by assignment, then took appropriate action to enforce the fixed amount of that judgment (the $156,600 fee award) by obtaining a writ of execution. If LLC wanted to preserve its right to take its claimed offsets despite Lalanne's apparent insolvency, it should have taken affirmative action to do so. Had LLC brought an action to establish its entitlement to the Section 3(e) offsets, it could have asked the court to stay enforcement of the James Judgment pending resolution of the offset action pursuant to section 918.5, thus protecting its interests. It failed to do so. In the absence of such an action, we see no barrier to Andreas's enforcement of the James Judgment.

Finally, LLC argues that the writ should be recalled because of its pending appeal of the January 29 Order. This argument requires that we first determine whether the appeal stayed enforcement of the James Judgment; if so, we then determine whether the writ should have been recalled and quashed to effect that stay. We conclude the appeal

14

stayed enforcement of the judgment and LLC was entitled to an order directing the sheriff to release any funds that had been levied (but not an order recalling and quashing the writ). However, LLC was not prejudiced by the court's denial of the motion because a stay of enforcement of the writ was in place.

Section 916, subdivision (a) provides, with exceptions not relevant here, "[A]n appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order . . . ."[8] Andreas suggested below that, regardless of the undertaking requirement, enforcement of a judgment is stayed only by an appeal from the judgment itself, not by an appeal from an order denying a motion to compel acknowledgement of satisfaction of judgment. But section 916's language is broad, providing that an appeal from an order "stays proceedings in the trial court upon the . . . order . . . *or upon the matters embraced therein or affected thereby*." (§ 916, subd. (a), italics added.) " ' "[W]hether a matter is 'embraced' in or 'affected' by a judgment [or order] within the meaning of [section 916] depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the 'effectiveness' of the appeal." [Citation.] "If so, the proceedings are stayed; if not, the proceedings are permitted." ' " (*Cunningham v. Magidow, supra,* 219 Cal.App.4th at p. 304, quoting *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.) In *Cunningham*, the court held that an appeal of an order that granted a motion to compel acknowledgement of partial satisfaction of judgment did not embrace or affect postorder proceedings that involved only the amount of the judgment that would have remained unpaid assuming the validity of the appealed

---

[8] LLC correctly notes that, while an undertaking is usually required to stay enforcement of a money judgment pending appeal (§ 917.1), this requirement does not apply to routine costs (*id.*, subd. (d); *Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 800–801), and at least one court has held that it does not apply to awards of contractual attorney fees (*Ziello v. Superior Court* (1999) 75 Cal.App.4th 651, 655 & fn. 2; see also *Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1546–1547 [undertaking requirement does not apply to award of statutory attorney fees under Civ. Code, § 1354]). We assume for purposes of argument that no undertaking was required for LLC's appeal of the January 29 Order.

15

order.  (*Ibid.*)  Here, however, postorder proceedings to levy the writ of execution were embraced by or affected by LLC's appeal of the January 29 Order because collection of the $156,600 fee award would undermine the purpose of the appeal, which was to allow LLC to offset equitable claims against that amount, at least in part.  Therefore, we agree with LLC that appeal of the January 29 Order triggered a stay under section 916.

The next issue is whether LLC had the right to a court order prohibiting the sheriff from disbursing levied funds because of the section 916 stay pending appeal.  Citing *Adir, supra,* 216 Cal.App.4th 996, LLC argues that it needed to file its motion to recall in order to preserve its rights under the stay.  The trial court disagreed because it believed the appeal automatically extinguished the liens created by the writ of execution.  We conclude that LLC was entitled to an order, but not an order recalling and quashing the writ.

In *Adir*, the judgment debtor attempted to enforce a stay of a judgment pending appeal by simply notifying the sheriff of the appeal.  The sheriff had already levied funds in the debtor's accounts pursuant to a writ of execution.  Despite receiving notice about the appeal, the sheriff disbursed those funds to the judgment creditor.  The debtor then asked the court to order the judgment creditor to return the funds.  The appellate court held the trial court had no jurisdiction to do so.  (*Adir, supra,* 216 Cal.App.4th at p. 998.)  LLC relies on dicta in the opinion, which describes how the debtor could have prevented disbursement of the funds:  "the debtor . . . could have sought an order from the court recalling and/or quashing the writ of execution and releasing the liens."  (*Id.* at p. 1003.)  In support of the statement, *Adir* cites *California Commerce Bank v. Superior Court* (1992) 8 Cal.App.4th 582 (*California Commerce Bank*), which describes in more detail the proper procedure under the current statutory scheme for enforcement of judgments:

"Section 697.040, subdivision (a)(1) provides that if enforcement of a judgment is stayed on appeal by the giving of a sufficient undertaking, existing liens created under Division 2 (§§ 695.010–709.030) are extinguished.  Section 697.710 provides that a 'levy on property under writ of execution creates an execution lien on the property from the time of levy . . . .'  Under section 697.050 '[i]f a lien created pursuant to this division is

16

extinguished, property held subject to the lien shall be released unless the property is to be held under another lien or the property is ordered by the court to be held pending resolution of a dispute concerning its proper disposition.' . . . [T]he Law Revision comment on section 697.050 explained that for property that had been levied upon by a levying officer, release was governed by section 699.060. [Citation.] [¶] Section 699.060, subdivision (a), requires a levying officer to release property, inter alia, *upon receipt of a certified copy of a court order for release or written directions to release from the judgment creditor or his attorney*. The release extinguishes any execution lien in favor of the judgment creditor on the released property. Subdivision (b) of section 699.060 provides that '[i]f the property to be released has been taken into custody under the levy, it shall be released to the person from whom it was taken unless otherwise ordered by the court . . . .' " (*California Commerce Bank, supra,* 8 Cal.App.4th at pp. 586–587, italics added.)

As we read *California Commerce Bank* and the cited statutes, LLC could have requested an order directing the sheriff to release LLC funds and, as recognized in *Adir*, "the court would have been required to issue" such an order if requested. (*Adir, supra,* 216 Cal.App.4th at 1000, citing *California Commerce Bank, supra*, 8 Cal.App.4th at p. 587.) An order recalling and quashing the writ would not necessarily have required the sheriff to return the levied funds. " 'When the writ has been regularly issued and executed, money collected, while in the hands of the officer, is property of the judgment creditors and not the debtor. Nothing can be done with it other than to turn it over to the creditor. . . . The rights of the parties cannot be interfered with except through procedure authorized by statute.' " (*California Commerce Bank*, at pp. 584–585.) As explained in *California Commerce Bank*, the "procedure authorized by statute" is a request for an order directing release of the levied funds, not an order recalling and quashing the writ of execution. (§ 699.060.) LLC was entitled to such an order.

Nevertheless, we conclude LLC was not prejudiced. A stay order had already been issued and the parties agreed that the stay would remain in effect until any appeal of

17

the order denying the motion to compel was resolved.[9]  Following resolution of this appeal, of course, the stay pending appeal will no longer be in effect.  At that point, the parties will be free to take other measures to protect their rights and interests.

## III.   DISPOSITION

The orders are affirmed.  The stay pending appeal shall remain in effect for 30 days following issuance of the remittitur to permit the parties to file appropriate new motions in the trial court.  LLC shall bear Andreas's costs on appeal.


_____
BRUINIERS, J.


WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.

---

[9] Although not briefed by the parties, the stay apparently was authorized by section 918.  (See also Ahart, *supra,* ¶ 6:619 at p. 6D-74 (rev. #1, 2014); Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 7:61, p. 7-23.)